# EXHIBIT A

FILED
Williamson Co. Circuit Court
1st Judicial Circuit
Date: 11/17/2020 1:03 PM
Andrew W. Wilson

## IN THE CIRCUIT COURT
## FIRST JUDICIAL CIRCUIT
## WILLIAMSON COUNTY, ILLINOIS

| | | |
|---|---|---|
| K.F.C, a minor, by and through her guardian, ERIN CLARK, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 2020L156 |
| SNAP, INC., | ) ) | |
| Defendant. | ) | |

### CLASS ACTION COMPLAINT

Plaintiff K.F.C. minor, by and through her guardian, Erin Clark ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Snap, Inc. ("Defendant" or "Snap") and alleges the following, upon personal knowledge as to her own acts, and upon information and belief derived from, among other things, investigation of counsel, as to all other matters:

### I. INTRODUCTION

1.      Plaintiff brings this action against Snap under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), pursuant to which she seeks injunctive relief, as well as statutory damages recoverable under BIPA. BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless it: (1) informs that person in writing that identifiers and information will be collected and/or stored, (2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored or used, (3) receives a written release from the person for the collection of that data, and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b). In addition (c) "No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or

biometric information." 740 ILCS 14/15(c). This action alleges that Snap violated these three provisions of BIPA.

2.      Developed, owned, operated, and exclusively controlled by Defendant, Snap, Snapchat ("Snapchat") "is a camera application ("app") that was created to help people communicate through short videos and images called 'Snaps.'"[1] What started as a humble company called "Future Freshman LLC" in 2010 has grown into a social media giant in the decade since. According to Snap's investor information, the application has, on average, 238 million active users exchanging over 4 billion snaps per day.[2] Snap boasts that "[o]ver 75% of the 13-34 year old U.S. population uses Snapchat."[3]

3.      One reason why Snapchat is so popular is because Snap represents that "Snaps" only exist for a finite period – usually just a few seconds, so that the user can send silly "Snaps" which purportedly self-delete.

4.      But what really happens to the 4 billion snaps that get sent through the application each day? For any posted content not set as "Public Content," Snap's Terms of Service state that users give "Snap Inc. and our affiliates a worldwide, royalty-free, sublicensable, and transferrable license to host, store, use, display, reproduce, modify, adapt, edit, publish and distribute that content."

5.      What Snap fails to disclose is that through its Snapchat app it collects and profits from Plaintiff's and other similarly situated Illinois users' "biometric identifiers" ("biometrics") without their informed, written consent. Snap's collection of these biometrics without the consent, or appropriate notice to users, is in violation of BIPA. For example, one of Snapchat's most popular features, "Lenses," which allows users to add special effects to their Snapchat photos, works by scanning the geometry of a person's face in Snaps, which is a violation of BIPA.

6.      Plaintiff brings this action individually and on behalf of other similarly situated

[1] S.E.C. Form 10-Q, Snap, Inc. (for the quarterly period ended June 30, 2020), at 11.
[2] *Investor Relations*, "Overview", SNAP INC., https://investor.snap.com/overview/default.aspx (last visited Nov. 16, 2020).
[3] *Id.*

Illinois residents for willful violations of the BIPA statute, which is punishable up to $5,000 per reckless violation.

## II. PARTIES

7.      Plaintiff K.F.C., by and through her guardian, Erin Clark (mother), is a minor child and a resident and citizen of the State of Illinois. Plaintiff K.F.C. is a 13-year-old former Snapchat user. Plaintiff downloaded the Snapchat app in Illinois, routinely used Snapchat in Illinois, has used numerous Lenses in her Snaps in Illinois, and has sent from Illinois Snaps with Lens effects to other Snapchat users. The relevant scans of Plaintiff's face in her Snaps occurred in Illinois, and the violations of BIPA alleged herein occurred primarily and substantially within Illinois. Plaintiff was unaware of and did not agree to the collection or storage of her biometric identifiers. Plaintiff K.F.C. is a minor and cannot be bound to any agreement Snap may say applies. Plaintiff hereby disaffirms and disavows any contract or agreement Snap may say applies to her. Plaintiff ceased using Snapchat prior to the filing of this complaint.

8.      Defendant Snap, Inc. is a Delaware corporation with its principal place of business located at 2772 Donald Douglas Loop North, Santa Monica, California 90405.  Snap, Inc. is a publicly-traded company, and is listed on the New York Stock Exchange under the trading symbol "SNAP."

## III. JURISDICTION

9.      This is a Class Action Complaint for violations of the Illinois Biometric Information Privacy Act (740 ILCS 14/1, *et seq.*) seeking statutory and actual damages.

10.      This Court has subject matter and personal jurisdiction over the parties to this cause of action.  Plaintiff is a citizen of Illinois, and resides in Williamson County, Illinois.

11.      This Class Action is brought on behalf of only Illinois citizens within the State of Illinois who had their respective biometric information collected by Defendant within the State of Illinois.

12.     Consistent with the Due Process Clauses of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over the Defendant because it conducts commerce in the State of Illinois, and is therefore present in the State of Illinois such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

13.     Plaintiff had her biometric identifiers captured, collected, stored or used by the Defendant in Williamson County, Illinois. Accordingly, venue is proper under 735 ILCS 5/1-108 and 2-101 of the Illinois Code of Civil Procedure.

## IV. SUBSTANTIVE ALLEGATIONS

### A.     The Illinois Biometric Information Privacy Act.

14.     BIPA was passed in 2008 in order to address the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276. Specifically, the legislature's findings were as follows:

(a)     The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

...

(f)     The full ramifications of biometric technology are not fully known.

(g)     The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

15.     BIPA defines a biometric identifier as follows:

"Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, **or scan of hand or face geometry**.

...

"Biometric information" means any information, regardless of how it is captured,

4

converted, stored, or shared, based on an individual's biometric identifier used to identify an individual.

740 ILCS 14/5 (*emphasis added*).

16.     The statute also governs the retention, collection, disclosure, and destruction of retained biometric identifiers or biometric information, and prohibits a private company from profiting from biometric identifiers:

    (a)     A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

    ...

    (b)     No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

        (1)     informs the subject or the subject's legally authorized representative authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

        (2)     informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

        (3)     receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

    (c)     No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 ILCS 14/5(a)-(c).

**B. Snapchat Is A Social Media Application Used To Send Photos And Videos To Other Snapchat Users.**

17.     Snapchat "is a camera application that was created to help people communicate through short videos and images called 'Snaps.'"[4]  According to Snap's investor information, the application has, on average, 238 million active users exchanging over 4 billion snaps per day.[5] Snap boasts that "[o]ver 75% of the 13-34 year old U.S. population uses Snapchat."[6]

18.     Within the application, Lenses and Filters are two very popular features that allow users to change their appearance, including to their faces, in Snaps. Lenses allow users to add special effects to their Snaps, including editing their appearances, as well as their voices. Filters work by acting as a design overlay over Snaps – similar to adding a preexisting frame or overlay to Snaps.

19.     Snapchat users can use many default Lenses and Filters that are provided within the Snapchat application. They can also create their own custom Lenses and Filters using Snap's Lens Studio, which is a program offered by Snap for free download.  Each time a Lens or Filter is used, Snap scans the image of the user's face to create a detailed map of the user's facial features, and their connection to one another.

**C. Snap violates BIPA.**

**1. Plaintiff's use of Snapchat.**

20.     Plaintiff is a 13-year-old child who lives, and at all relevant times has lived, in the State of Illinois and used Snapchat in Illinois. In addition to sending Snaps to other users, Plaintiff used in Illinois various aspects of the application that change the appearance of her face in Snaps, including numerous Lenses, that were sent from Illinois to other Snapchat users. One of the Lenses that Plaintiff used was "Devil's Heart" – a Snapchat Lens that alters the image of a person's face so that she appears to have freckles on the nose and cheeks, as well as devil's horns on the forehead

---

[4] S.E.C. Form 10-Q, Snap, Inc. (for the quarterly period ended June 30, 2020), at 11.

[5] Investor Relations, *Overview*, SNAP INC., https://investor.snap.com/overview/default.aspx (last visited Nov. 16, 2020).

[6] *Id.*

above the eyes.

### 2. Snapchat Collects, Captures or Otherwise Obtains Faceprint/Facial Biometric Identifiers.

21.     Four years ago, on September 15, 2015, a Ukrainian "selfie" animation phone application called Looksery mysteriously disappeared from App Stores.[7] On the very same day, September 15, 2015, Snap launched a new component of its own application, which it called "Lenses."[8] It was later confirmed that Looksery and its application technology were acquired by Snap[9] for approximately $150 million dollars.[10] According to Business Insider, "[Looksery] uses facial recognition technology to essentially photoshop video chats and messages in real time."[11] TechCrunch, a respected online publisher of tech-industry focused content, published an article in September 2015 titled "Snapchat Acquires Looksery To Power Its Animated Lenses."[12] That article compared what it called Looksery's facial recognition, as compared to Snapchat's Lenses, to show how similar they are:



*Looksery's facial recognition on the left, Snapchat's seemingly identical facial recognition on the right.*[13]

---

[7] Josh Constine, *Snapchat Acquires Looksery to Power its Animated Lenses*, TECHCRUNCH (Sept. 15, 2015), https://techcrunch.com/2015/09/15/snapchat-looksery/?guccounter=1.

[8] *Id.*

[9] *Id.*

[10] Alyson Shontell, *Snapchat buys Looksery, a 2-year-old startup that lets you Photoshop your face while you video chat*, BUSINESS INSIDER (Sept. 16, 2015), https://www.businessinsider.in/Snapchat-buys-Looksery-a-2-year-old-startup-that-lets-you-Photoshop-your-face-while-you-video-chat/articleshow/48978563.cms.

[11] *Id.*

[12] *See* https://techcrunch.com/2015/09/15/snapchat-looksery/?guccounter=1, supra n.8.

[13] https://techcrunch.com/2015/09/15/snapchat-looksery/?guccounter=1, supra n.8.

22.     Evidently, both use numerous points of facial landmarks from Snaps, which are connected by lines to create a facial map; in other words, they are "scan[s] of . . . face geometry," a biometric identifier pursuant to BIPA. 740 I.L.C. 14/10.

23.     Snap does not make the disclosures required by BIPA and does not obtain informed consent of users in violation of BIPA.

24.     Snap continues to offer and operate the Lenses feature on its platform. Following Snapchat's integration of Looksery's technology, Looksery's founder, Victor Shaburov, joined the Snapchat team in an effort to successfully integrate the technology that he helped create. Subsequently, Shaburov become Snapchat's director of engineering before leaving to start a new company in 2018 (which was also acquired by Snapchat).[14]

25.     Snapchat's Lens Studio is a free software program owned by Snap that allows users to create their own unique effects beyond those already available to all users within the Snapchat application. Snap describes the Lens Studio as follows: "The World Is Your Canvas. . . . With a huge set of built-in features, including . . . . advanced tracking technology, the possibilities are endless." [15]

26.     Within the Lens Studio webpage, Defendant explains how Lenses are created, and how they work. This explanation evidences that Lenses utilize biometric identifiers, specifically, a "scan of . . . face geometry," as defined by BIPA. 740 I.L.C. 14/10. For example, under the "Learn" heading in the Lens Studio, Snap discusses various types of effects that distort and change a person's face – effects which would not exist but for a facial mapping or scanning of a person's face in a Snap by Snapchat.  As Lens Studio states with respect to one of the Lenses that is supposed to stretch a person's face: "The Face Stretch Effect distorts the shape of the face by manipulating **points mapped to the face**" [16] (*emphasis added*).

[14] Ingrid Lunden, *Snapchat quietly acquired AI Factory, the company behind its new Cameos feature, for $166M,* TECHCRUNCH (Jan. 3, 2020), https://techcrunch.com/2020/01/03/snapchat-quietly-acquired-ai-factory-the-company-behind-its-new-cameos-feature-for-166m/.

[15] Lens Studio, SNAP INC., https://lensstudio.snapchat.com/ (last visited Nov. 16, 2020).

[16] Lens Studio, Learn, Templates, *Distort*, SNAP INC., https://lensstudio.snapchat.com/templates/face/distort/ (last visited Nov. 16, 2020).

8

27.     The Face Stretch Effect and the mapping of the various points on a person's face can be seen in this image, which is consistent with the technology Snap acquired from Looksery:



28.     Lenses allow users to apply many effects to their own faces, from cartoonish effects like bug-eyes, face stretching and other distortions, to subtle make-up effects, such as smoothing facial texture, altering eye color, whitening teeth, and softening the skin.[17]

29.     According to Snap, the "Face Landmarks" tool in the Lens Studio captures 93 points on each user's face and allows for manipulation of the distance between two points on the map of the face. Snap touts that "Face Landmarks are great if you want to track specific parts of the face since you have 93 points to attach to," stating as follows in relevant part:

> Face Landmarks are 93 points that are tracked with the user's face. Like Object tracking, the position of the points are in screen space. Face Landmarks are great if you want to track specific parts of the face since you have 93 points to attach to. You can also make fun interaction by getting distance between two of the landmarks and make interaction based on the distance.

*Id.*

---

[17] Lens Studio, Learn, Templates, *Face Retouch*, https://lensstudio.snapchat.com/guides/face/face-effects/face-retouch/.

9

30.     The Lens Studio user can even shift into "Points Mode," which gives a display of each of the important facial points that the application maps and uses; this can be seen in this image:



31.     Facial mapping, which measures, compares, and tracks the "landmarks" of a person's face, and the distance between the landmarks, as demonstrated in Snapchat's own explanations of its Lens technology, are evidently biological-based measurements from a "scan of . . . face geometry." 740 ILCS 14/10.

32.     Additionally, Snapchat's Filters tool also scans facial geometry in violation of BIPA. Filters are similar to Lenses, however Filters are "frames and artwork" that can be applied to Snaps, whereas Lenses are "augmented reality experiences friends can play with."[18]

33.     According to an article written by James Le, the editor of Cracking the Data Science Interview, titled "Snapchat's Filters: How computer vision recognizes your face," the application of extracting facial landmarks is applied to Filters as well. Specifically, he states that, "[f]or each

---

[18] Filters & Lenses, *Create Your Own, Snap Inc.*, https://www.snapchat.com/create (last visited Nov. 16, 2020).

detected face . . . the local region coordinates for each member or facial feature of that face. This includes the eyes, bone, lips, nose, mouth . . . . coordinates usually in the form of points . . . ."[19] (emphasis omitted).

       An example of a popular Snapchat Filter is one called "Old." The "Old" Filter, which was named one of the best Snapchat Filters of 2020, considerably ages a person's appearance in Snaps. It edits faces detected in the Snap by making the person's skin appear older, as well as turning hair grey.[20] An example of this Filter can be seen below:

### Old by Snapchat



       34.    Snap does not disclose that its Lenses and Filters collect, capture, or otherwise obtain biometric identifiers, and do not give to users, or receive from users, the informed written consent required by the statute prior to obtaining users' biometric identifiers. Snap does not disclose how the biometric identifiers are used, if they are shared with or sold to third parties, and if there is a purpose for the collection of these identifiers and information, in violation of BIPA.

       35.    Indeed, Snap tells users that Lenses are not facial recognition, which gives users false comfort about a subject it knows users are concerned about, namely the use of biometrics in consumer technology. Snap states the following on a section of its website it calls "Privacy by Product:"

---

[19] James, Le, *"Snapchat's Filters: How computer vision recognizes your face: The science behind personalized facial recognition,"* MEDIUM (Jan. 28, 2018), https://medium.com/cracking-the-data-science-interview/snapchats-filters-how-computer-vision-recognizes-your-face-9907d6904b91.

[20] Henry T. Casey, *19 best Snapchat filters in 2020*, TOM'S GUIDE (July 27, 2020), https://www.tomsguide.com/round-up/best-snapchat-filters.

Lenses

Ever wonder how Lenses swap your face with a friend's or give you puppy dog ears? Some of the magic behind Lenses is due to "object recognition." Object recognition is an algorithm designed to help a computer generally understand what objects are in an image. In this case, it lets us know that a nose is a nose or an eye is an eye. But, object recognition isn't the same as facial recognition. While Lenses can tell what is or isn't a face, they don't recognize specific faces![21]

36.     BIPA does not contain the phrases facial recognition, or object recognition. BIPA governs, relevant to this case, biometric identifiers, which means "a scan of hand or face geometry." 740 I.L.C. 14/10. Snap's statement in its Privacy Policy that its Lenses do not use facial recognition is not relevant to whether it collects biometric identifiers.

37.     Plaintiff does not allege that Snap utilizes facial recognition. However, as noted above, respected tech publications have described Snap's Lenses as utilizing facial recognition technology, and, indeed, patents, or patent applications, owned by Snap (or companies it acquired) utilize the term facial recognition.  If Snap is not using facial recognition currently, there is reason to believe that at the least Snap has the technology to perform facial recognition, and is planning on using facial recognition in the future because it has a patent that claims expressly to be able to perform facial recognition. In 2016 Snap obtained a patent (US9396354B1) described in the patent application as follows:

> SUMMARY OF THE INVENTION
> A method executed by a computer includes receiving an image from a client device. **A facial recognition technique is executed against an individual face within the image to obtain a recognized face.** Privacy rules are applied to the image, where the privacy rules are associated with privacy settings for a user associated with the recognized face. A privacy protected version of the image is distributed, where the privacy protected version of the image has an altered image feature.[22] *(emphasis added)*.

38.     Moreover, a Looksery patent application (US20150195491A1), a company

---

[21] Privacy by Product, *Snaps & Chats*, SNAP INC., https://www.snap.com/en-US/privacy/privacy-by-product (last visited Nov. 16, 2020).

[22] Google Patents, US9396354B1, GOOGLE, https://patents.google.com/patent/US9396354 (last visited Nov. 16, 202).

acquired by Snap, claims to be able to identify individual faces:[23]

> [0070]. According to various embodiments of this disclosure, **a face in an image can be identified** by application of a Viola-Jones algorithm and ASM algorithm. In particular, a Viola-Jones algorithm is a fast and quite accurate method for detecting a face region on an image. An ASM algorithm is then applied to the face region **to locate reference feature points associated with the face.** These feature reference points can include one or more facial landmarks such as ala, philtrum, vermilion zonem, vermilion border, nasolabial sulcus, labial commissures, lip tubercle, nasion, outer canthos of eye, inner canthos of eye, and tragus of ear. Moreover, **the feature reference points can include one or more of the following facial points indicating: eyebrows' vertical position, eyes' vertical position, eyes' width, eyes' height, eye separation distance, nose's vertical position, nose's pointing up, mouth's vertical position, mouth's width, chin's width, upper lip raiser, jaw drop, lip stretcher, left brow lowerer, right brow lowerer, lip corner depressor, and outer brow raiser.** FIG. 5 shows an example image of a face where multiple reference feature points are illustrated (*emphasis added*).

> [74] Further, the shape model specifies allowable constellations of landmarks. A shape of individual can be given by its shape vector x=(xi T)T, where xi is i-th facial landmark. The shape model generates the shape {circumflex over (x)} with... (*emphasis added*).

39.     Although the foregoing patent application does not reference Lenses specifically, Lens effects are applied over video image Snaps as well as photos, and the same technology (or elements of it) may be utilized in the creation and application of Lenses. The patent's statement that the technology utilizes facial landmarks such as "eye separation distance . . . nose's [SIC] pointing up" is consistent with the technology that Snap says is used in its Lenses. (Supra at paragraphs 27-30).

40.     Use of Snapchat, which is the app owned, operated, and wholly controlled by Snap, is governed by its Terms of Service. Although plaintiff is a minor who has not entered into the contract and has disaffirmed it, as described above in the Parties section, the Terms of Service evidence that the content on Snapchat, which would include Snaps that have been altered with Lenses and Filters, is usable, storable, and modifiable by Snap:

---

*https://patents.google.com/patent/US20150195491A1/en*

13

For all content you submit to the Services other than Public Content, you grant Snap Inc. and our affiliates a worldwide, royalty-free, sublicensable, and transferable license to host, store, use, display, reproduce, modify, adapt, edit, publish, and distribute that content. This license is for the limited purpose of operating, developing, providing, promoting, and improving the Services and researching and developing new ones.

Because Public Content is inherently public and chronicles matters of public interest, the license you grant us for this content is broader. For Public Content, you grant Snap Inc., our affiliates, and our business partners all of the same rights you grant for non-Public Content in the previous paragraph, as well as a perpetual license to create derivative works from, promote, exhibit, broadcast, syndicate, publicly perform, and publicly display Public Content in any form and in any and all media or distribution methods (now known or later developed). To the extent it's necessary, when you appear in, create, upload, post, or send Public Content, you also grant Snap Inc., our affiliates, and our business partners the unrestricted, worldwide, perpetual right and license to use your name, likeness, and voice, including in connection with commercial or sponsored content.

### 3.   Snapchat Profits from Users' Biometric Identifiers.

41.     Snap profits from Snapchat users' biometric identifiers, in violation of BIPA, which prohibits private entities in possession of a biometric identifier from selling, leasing, trading, or otherwise profiting from a person's or a customer's biometric identifier. 740 I.L.C.S. 14/15. The Lenses and Filters attract users and have contributed to the user growth of the Snapchat application. This increase in users, in turn, attracts advertisers who pay Defendant to advertise within its application.

42.     In the fourth quarter of 2014, Snapchat had approximately 71 million users, the bulk of whom were in North America.[24] Following the introduction of the Lenses and Filters in September 2015, Snapchat's userbase grew to 107 million users.[25] The increase in users has a direct correlation to an increase in revenue, the majority of which comes from advertisers.[26] In the fourth quarter of 2014, Snapchat earned approximately $3 million.[27] But by the fourth quarter of

---

[24] *Snap Inc. Revenue and Usage Statistics (2020)*, BUSINESS OF APPS, https://www.businessofapps.com/data/snapchat-statistics/#1 (last updated Oct. 30, 2020).

[25] *Id.*

[26] *Id.*

[27] Alyson Shontell, *Snapchat generated only $3.1 million last year*, BUSINESS INSIDER (Aug. 19, 2015), https://www.businessinsider.com/snapchat-only-generated-31-million-last-year-2015-8.

2015, its revenue ballooned to $32.7 million and, with a few quarterly exceptions, has steadily increased to revenue in the amount of $454 million in the second quarter of 2020.[28]  Significantly, advertiser-sponsored Lenses are currently Snapchat's most expensive offerings to advertisers, with ad rates ranging from $450,000 to $700,000.[29]  In short, Snapchat's offering of Lenses, which collect users' biometric identifiers, directly contributes to Defendant's advertising profits, in violation of BIPA.  740 I.L.C.S. 14/15.

### 4.    Snapchat Has a Dubious History Regarding User Privacy.

43.    In December of 2014, the Federal Trade Commission alleged that Snap (at the time named Snapchat, Inc.) violated the Federal Trade Commission Act. *In the Matter of Snapchat, Inc., a corporation*, Docket No. C-4501 (F.T.C. Complaint, Dec. 2014).

44.    Those charges claimed Snapchat deceive(d/s) users in the following ways: the representation that "when sending a message through the application, the message will disappear forever after the user-set time expires" was false and misleading, the representation that users will be notified if a screenshot is taken of their "Snap" was false and misleading, the representation that Snapchat does not collect geolocation information was false and misleading, the representation that Snapchat does not harvest a user's contacts information was false and misleading, the representation that Snapchat only collects email, phone number, and Facebook ID when "finding friends" was false and misleading, and the representation that Snapchat protects user information from misuse and unauthorized disclosure was false and misleading. *Id.* The matter was resolved by settlement with Snap neither admitting nor denying wrongdoing. The settlement required Snap to agree to change its privacy disclosures and to otherwise strengthen user privacy.

45.    In 2019, an investigative report by Vice revealed that Snapchat not only has the tools to spy on users, but that employees had abused these tools previously.[30]  That report relied on former Snapchat employees and revealed that "multiple Snap employees abused their access to

---

[28] *Id.*

[29] *Id.*

[30] Joseph Cox, *Snapchat Employees Abused Data Access to Spy on Users*, MOTHERBOARD TECH BY VICE (May 23, 2019), https://www.vice.com/en_us/article/xwnva7/snapchat-employees-abused-data-access-spy-on-users-snaplion.

Snapchat user data . . . . additional . . . employees, a current employee, and a cache of internal company emails obtained by [Vice], described internal tools that allowed Snap employees at the time to access user data, including in some cases location information, their own saved Snaps and personal information such as phone numbers and email addresses."[31]   According to that report, "[o]ne of the internal tools that can access user data is called SnapLion . . . . [t]he tool was originally used to gather information on users in response to valid law enforcement requests . . . ."[32]

46.     These specific allegations were not denied by Snapchat. Rather, in a released statement, Snap vaguely claimed: "Protecting privacy is paramount at Snap. We keep very little user data, and we have robust policies and controls to limit internal access to the data we do have. Unauthorized access of any kind is a clear violation of the company's standards of business conduct and, if detected, results in immediate termination."[33]

## V. CLASS ALLEGATIONS

47.     This action is brought by the named Plaintiff on her own behalf and on behalf of a proposed Class of all other persons similarly situated, pursuant to 735 ILCS 5/2-801, *et seq.*, defined as follows:

> All Illinois citizens whose biometric information or biometric identifiers were collected, captured purchased, received through trade, or otherwise obtained by Snap by, among other means, using Snap's Lenses and/or Filters, in Illinois , in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et. seq.*

48.     All members of the proposed Class are citizens of Illinois. The principal injuries resulting from the alleged conduct or any related conduct of each Defendant were incurred in Illinois. On information and belief, no other class action is pending asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

16

49.     The Plaintiff is the master of their complaint and cause. Plaintiff specifically excludes from the proposed class the claims of any non-Illinois citizen; any and all claims against any non-Illinois citizens; any other claims, including claims for personal injury, wrongful death, or other property damage sustained by the Class; and any Judge conducting any proceeding in this action and members of their immediate families.

50.     The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members is unknown at this time, it is generally ascertainable by appropriate discovery, is in the exclusive control of the Defendants, and it is believed that the Class may include at least thousands of members.

51.     Common questions of law or fact arising from the defendants' conduct exist as to all members of the Class, as required by 735 ILCS 5/2-801. These common questions include, but are not limited to, the following:

a.     Whether the Defendant captured, or collected, the biometric identifiers of the Plaintiff and the Class.

b.     If Defendant captured, or collected, the biometric identifiers of the Plaintiff and the Class, did the Defendant inform the Plaintiff and the Class in writing that a biometric identifier was being collected or stored?

c.     If Defendant captured, or collected, the biometric identifiers of the Plaintiff and the Class, did the Defendant inform the Plaintiff and the Class in writing of the specific purpose and length of term for which a biometric identifier was being collected, or captured?

d.     If Defendant captured, or collected, the biometric identifiers of the Plaintiff and the Class, did the Defendant receive a written release executed by the Plaintiff and the Class of the biometric identifier, or the Plaintiff's or Class' legally authorized representative?

e.     If Defendant captured, or collected, the biometric identifiers of the Plaintiff and the Class, did the Defendant develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers when the initial purpose for collecting or obtaining such identifiers has been satisfied, or within 3 years of the individual's last interaction with the private entity, whichever occurs first?

f.     If the Defendant captured, or collected, the biometric identifiers of the Plaintiff

17

and the Class, did the Defendant profit from the biometric identifiers of the Plaintiff and the Class?

52.     Class action treatment provides a fair and efficient method for the adjudication of the controversy herein described, affecting a large number of persons, joinder of whom is impracticable.  The class action device provides an appropriate and effective method whereby the enforcement of the rights of Plaintiff and members of the Class can be fairly managed without unnecessary expense or duplication  The expense and burden of individual litigation of a case of this magnitude makes it impracticable for individual Class members to seek redress for the wrongs worked upon them.

53.     Individual litigation of all claims which might be asserted by all Class members would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. The certification of a Class would allow litigation of claims that, in view of the expenses of litigation, may be insufficient in amounts to support separate actions. Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of individual Class members, and result in judicial consistency.

54.     Plaintiff will fairly and adequately protect the interests of the Class Plaintiffs represent. The interests of Plaintiff, as the Class representative, are consistent with those of the members of the Class. In addition, Plaintiff is represented by counsel experienced in complex and class action litigation.

55.     The prosecution of separate actions by individual members of the Class would create a risk of:

    a.     Inconsistent or varying adjudications with respect to individual members of the Class; and

18

b.   Adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

56.   Plaintiff and Class members envision no unusual difficulty in the management of this action as a Class action.

## VI. <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>

**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)
On Behalf of Plaintiff and The Class**

57.   Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

58.   BIPA requires that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

59.   Snap is a private entity under BIPA.

60.   Plaintiff and putative Class members are members of the public and users of Defendant's Snapchat application.

61.   When users use Lenses or Filters on the Snapchat app, the app takes a scan of the user's facial geometry from the digital image and videos created when users create Snaps. Accordingly, Snap collects, and is in possession of, biometric identifiers.

62.   Snap did not provide to Plaintiff and putative Class members a publicly available retention schedule or guidelines for permanently destroying users' biometric identifiers when the initial purpose for collecting such identifiers was satisfied or within 3 years of Plaintiff and Class members' last interactions with Snapchat, as required by BIPA. Thus, Snap violated Section 15(a)

19

of BIPA. Snap's violations actually harmed or posed a material risk of harm to the privacy interests that BIPA seeks to protect.

63.   Snap's violations of BIPA were intentional and/or reckless, or, alternatively, negligent.

## COUNT II
### Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)
### On Behalf of Plaintiff and The Class

64.   Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

65.   BIPA makes it illegal for a private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers and biometric information unless it first: (1) informs the subject . . . in writing that biometric identifiers and biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . ." *See* 740 ILCS 14/10.

66.   Snap is a private entity under BIPA.

67.   Plaintiff and putative Class members are individuals who had their biometric identifiers and/or biometric information, in the form of a scan of their face geometry, collected, captured, purchased, received through trade or otherwise obtained by Snap in the course of the services it offers, as alleged herein.  Such Class members include, at the least, those who have used Snapchat's Lenses and Filters features.

68.   Snap systematically and automatically collects, captures, purchases, receives through trade, or otherwise obtains Plaintiff and putative Class members' biometric identifiers without first obtaining the necessary written release, as required by 740 ILCS 14/15(b)(3).

69.   Snap failed to inform Plaintiff and putative Class members in writing that their biometric identifiers would be – and have been – collected, captured, purchased, received through

trade, or otherwise obtained through the use of the Snapchat application, as required by 740 ILCS 14/15(b)(1)-(2).

70.     Snap also failed to inform Plaintiff and putative Class members in writing of the specific purpose and the amount of time for which their biometric identifiers would be – and have been – collected, captured, purchased, received through trade, or otherwise obtained, as required by 740 ILCS 14/15(b)(1)-(2).

71.     Snap did not receive a written release from Plaintiff and putative Class members allowing Snap to collect, capture, purchase, receive through trade or otherwise obtain biometric identifiers from Plaintiff and Class members, as required by 740 ILCS 14/15(b)(3).

72.     By collecting, capturing, purchasing, receiving through trade or otherwise obtaining without informed consent Plaintiff's and putative Class members biometric identifiers as described, Snap violated – and continues to violate – the rights of Plaintiff and putative Class members to keep private these biometric identifiers, as required by BIPA. Snap's violations actually harmed or posed a material risk of harm to the privacy interests that BIPA seeks to protect.

73.     Snap's violations of BIPA were intentional and/or reckless, or, alternatively, negligent.

**COUNT III**
**Violation of the Illinois Biometric Information Privacy Act**
**740 ILCS 14/15(c)**
**On Behalf of Plaintiff and The Class**

74.     Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

75.     740 ILCS 14/15(c) prohibits a private entity in possession of biometric identifiers or biometric information from selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information.

76.     Snap is a private entity under BIPA.

77.     As alleged above, Snapchat's Lenses and Filters collect the biometric identifiers of users including Plaintiff and the Class  Lenses and Filters are an important driver of Snap's

21

revenues, profits and growth in user base, as alleged above. Snap has directly profited from the collection of users' biometric identifiers and/or biometric information, in violation of 740 ILCS 14/15(c), and these violations actually harmed or posed a material risk of harm to the privacy interests that BIPA seeks to protect.

78.     Snap's violations of BIPA were intentional and/or reckless, or, alternatively, negligent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff K.F.C., through her guardian, Erin Clark, on behalf of herself and all others similarly situated, respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action;

B.     Appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

C.     Declaring that Snapchat's actions, as stated herein, violate the rights of Plaintiff and putative Class members under BIPA;

D.     Awarding statutory damages of $5,000 per each intentional and reckless violation of BIPA pursuant to the statute, or, alternatively, statutory damages of $1,000 per each negligent violation of BIPA pursuant to the statute;

E.     Awarding injunctive and equitable relief as necessary to protect the rights of Plaintiff and putative Class members under BIPA;

F.     Awarding Plaintiff and the putative Class their reasonable litigation expenses and attorneys' fees;

G.     Awarding Plaintiff and the putative Class pre- and post- judgement interest to the extent allowable; and,

H.     Awarding such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: November 17, 2020

Respectfully Submitted,
**THE DRISCOLL FIRM LLC**

*/s/ John J. Driscoll*
John J. Driscoll, #6276464
Ethan D. Hatch, #6322574
1311 Avenida Juan Ponce de Leon
6th Floor
San Juan, PR 00907
Phone: (618) 444-6049
Fax: (314) 932-3233
john@jjlegal.com

**MILBERG PHILLIPS GROSSMAN LLP**
Marc Grossman, # 6311731
Andrei Rado*
Blake Hunter Yagman*
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Telephone: (212) 594-5300
Email:   mgrossman@milberg.com
         arado@milberg.com
         byagman@milberg.com

**WHITFIELD BRYSON & MASON LLP**
Matthew Lee*
Erin Ruben*
Caroline Taylor*
900 W. Morgan Street
Raleigh, NC 27605
Telephone: (919) 600-5000
E-mail:   matt@whitfieldbryson.com
          erin@whitfieldbryson.com
          caroline@whitfieldbryson.com

**GREG COLEMAN LAW PC**
Gregory F. Coleman*
Jonathan B. Cohen*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

* pro hac vice forthcoming
*Attorneys for Plaintiff and the Putative Class*

23

FILED
Williamson Co. Circuit Court
1st Judicial Circuit
Date: 11/18/2020 11:34 AM
Andrew W. Wilson

**IN THE CIRCUIT COURT
FIRST JUDICIAL CIRCUIT
WILLIAMSON COUNTY, ILLINOIS**

K.F.C., a minor, by and through her guardian,   )
ERIN CLARK, individually and on behalf of   )
all others similarly situated,   )
   )
        Plaintiff,   )
   )      Case No. 2020L156
   )
SNAP, INC.,   )
   )
        Defendant.   )

## MOTION TO APPOINT SPECIAL PROCESS SERVER

COMES NOW Plaintiff, K.F.C., a minor, by and through her guardian, ERIN CLARK, individually and on behalf of all others similarly situated, and hereby moves this Court to appoint Michele Mannion, 2171 Greenbriar Road, Springfield, IL 62704 as a Special Officer for service of summons, said person being over the age of 21 and having no interest in the above-captioned matter.

Dated: November 18, 2020

        Respectfully Submitted,
        **THE DRISCOLL FIRM LLC**

        */s/ John J. Driscoll*
        John J. Driscoll, #6276464
        Ethan D. Hatch, #6322574
        1311 Avenida Juan Ponce de Leon, 6th Floor
        San Juan, PR 00907
        Phone: (618) 444-6049
        Fax: (314) 932-3233
        john@jjlegal.com
        ethan@jjlegal.com

**MILBERG PHILLIPS GROSSMAN LLP**
Marc Grossman, # 6311731
Andrei Rado*
Blake Hunter Yagman*
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Telephone: (212) 594-5300
Email:   mgrossman@milberg.com
             arado@milberg.com
             byagman@milberg.com

**WHITFIELD BRYSON & MASON LLP**
Matthew Lee*
Erin Ruben*
Caroline Taylor*
900 W. Morgan Street
Raleigh, NC 27605
Telephone: (919) 600-5000
E-mail:   matt@whitfieldbryson.com
             erin@whitfieldbryson.com
             caroline@whitfieldbryson.com

**GREG COLEMAN LAW PC**
Gregory F. Coleman*
Jonathan B. Cohen*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

* pro hac vice forthcoming
*Attorneys for Plaintiff and the Putative Class*

**IN THE CIRCUIT COURT**
**FIRST JUDICIAL CIRCUIT**
**WILLIAMSON COUNTY, ILLINOIS**

K.F.C., a minor, by and through her guardian,  )
ERIN CLARK, individually and on behalf of      )
all others similarly situated,                 )
                                               )
           Plaintiff,                          )
                                               )        Case No. 2020L156
                                               )
SNAP, INC.,                                    )
                                               )
           Defendant.                          )

**[PROPOSED] ORDER**

IT IS HEREBY ORDERED that Plaintiff's Motion to Appoint Special Process Server is

GRANTED. Michele Mannion, 2171 Greenbriar Road, Springfield, IL 62704 is hereby

appointed as a Special Officer for service of Summons in this matter.


Dated: _____          _____