**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| K.F.C., a minor, by and through her guardian, ERIN CLARK, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 3:21-cv-00009-DWD |
| v. | Hon. David W. Dugan |
| SNAP INC., | |
| Defendant. | |

---

**DEFENDANT SNAP INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION AND DISMISS,
OR IN THE ALTERNATIVE, STAY CLAIMS**

---

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................................ 2

      A.    The Parties ......................................................................................... 2

      B.    Causes of Action ............................................................................... 2

      C.    Snap's Terms of Service and Arbitration Agreement ............................. 3

      D.    Plaintiff's Agreement to Arbitrate Her Claims ....................................... 7

ARGUMENT ............................................................................................................... 8

    I.    PLAINTIFF ENTERED INTO A VALID AND ENFORCEABLE
          ARBITRATION AGREEMENT WITH SNAP. .................................................. 9

      A.    Plaintiff Agreed To Arbitrate Her Claims and Disputes With Snap .......... 9

      B.    The Parties' Agreement Is Enforceable. ................................................ 12

    II.    PLAINTIFF'S CLAIMS ARE WITHIN THE SCOPE OF THE
          ARBITRATION AGREEMENT ....................................................................... 15

    III.    PLAINTIFF CANNOT NOW "DISAVOW" HER ARBITRATION
          AGREEMENT WITH SNAP IN ORDER TO AVOID ARBITRATION. ......... 17

    IV.    THE COURT SHOULD DISMISS THE ACTION IN FAVOR OF
          ARBITRATION. ............................................................................................... 19

CONCLUSION ............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armendariz v. Found. Health Psychcare Servs.*,
   24 Cal. 4th 83 (2000) ...........................................................................................................12

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..................................................................................................8, 12, 14

*Belton v. Comcast Cable Holdings, LLC*,
   60 Cal. Rptr. 3d 631 (Cal. Ct. App. 2007) ..........................................................................13

*Brown v. Luxittica Rental N. Am. Inc.*,
   No. C 7816, 2010 WL 3893820 (N.D. Ill. Sept. 29, 2010)....................................................14

*Carbajal v. H & R Bock Tax Servs., Inc.*,
   372 F.3d 903 (7th Cir. 2004) ...............................................................................................16

*CK Witco Corp. v. Paper Allied Indus.*,
   272 F.3d 419 (7th Cir. 2001) ...............................................................................................16

*Corrigan v. Domestic Linen Supply Co.*,
   No. 12 C 0575, 2012 WL 2977262 (N.D. Ill. July 20, 2012) ..........................................16, 17

*Crawford v. Beachbody, LLC*,
   No. 14CV1573, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)................................................10

*Davis v. Fenton*,
   26 F. Supp. 3d 727 (N.D. Ill. 2014) .........................................................................12, 13, 14

*Davis v. Nordstrom, Inc.*,
   755 F.3d 1089 (9th Cir. 2014) .............................................................................................15

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
   885 F. Supp. 2d 894 (S.D. Ill. 2012)....................................................................................18

*In re Facebook Biometric Information Privacy Litigation*,
   185 F.Supp. 3d 1155 (N.D. Cal. May 5, 2016)......................................................................10

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)........................................................................................................8, 9, 17

*Fried Trading Co. v. Austern*,
   No. 86 C 8223, 1989 WL 57053 (N.D. Ill. May 22, 1989) ...................................................15

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*,
   No. 17 CV 1542, 2018 WL 2933608 (N.D. Ill. June 12, 2018)..............................................10

# TABLE OF CONTENTS
(continued)

Page

*Gore v. Allitel Commc'ns, LLC*,
   666 F.3d 1027 (7th Cir. 2012) ..................................................................8, 16

*Gravillis v. Coldwell Banker Residential Brokerage Co.*,
   49 Cal. Rptr. 3d 531 (Cal. Ct. App. 2006) ..................................................15

*Guadagno v. E\*Trade Bank*,
   592 F. Supp. 2d 1263 (C.D. Cal. 2008) ......................................................11

*In re H & R Block Refund Anticipation Loan Litig.*,
   59 F. Supp. 3d 903 (N.D. Ill. 2014) ............................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ..................................................................................17

*HTG Capital Partners, LLC v. Doe*,
   No. 15 C 02129, 2016 WL 612861 (N.D. Ill. Feb. 16, 2016) ....................19

*Ingram v. Neutron Holdings, Inc.*,
   No. 3:20-CV- 00037, 2020 WL 2733726 (M.D. Tenn. May 26, 2020) ......18

*Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*,
   No. 04 C 1190 2007 WL 951943 (N.D. Ill. Mar. 27, 2007) ......................19

*Johnson v. Uber Techs., Inc.*,
   No. 16 C 5468, 2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) ..................10

*Kuznik v. Hooters of Am., LLC*,
   No. 1:20-CV-01255, 2020 WL 5983879 (C.D. Ill. Oct. 8, 2020) ..............17

*Lifescan, Inc. v. Premier Diabetic Servs.*,
   363 F.3d 1010 (9th Cir. 2004) ......................................................................8

*Lucas v. Hertz Corp.*,
   875 F. Supp. 2d 991 (N.D. Cal. 2012) ..........................................................9

*Miracle-Pond v. Shutterfly, Inc.*,
   No. 19 CV 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020)................11

*Mitchell v. Verizon Wireless*,
   No. 05 C 511, 2006 WL 862879 (N.D. Ill. Mar. 31, 2006) ......................12

*Morris v. Redwood Empire Bancorp*,
   27 Cal. Rptr. 3d 797 (Cal. Ct. App. 2005) ..................................................13

## TABLE OF CONTENTS
(continued)

**Page**

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ..................................................................................................16

*Moule v. United Parcel Serv. Co.*,
   No. 16-cv-00102-JLT, 2016 WL 3648961 ............................................................10

*Naria v. Trover Sols., Inc.*,
   967 F. Supp. 2d 1332 (N.D. Cal. 2013) ................................................................12

*NewNet Commc'n Techs., LLC v. VI E-Cell Tropical Telecom, Ltd.*,
   85 F. Supp. 3d 988 (N.D. Ill. 2015) ......................................................................12

*O'Quinn v. Comcast Corp.*,
   No. 10 C 2491, 2010 WL 4932665 (N.D. Ill. Nov. 29, 2010) ...............................15

*Paster v. Putney Student Travel, Inc.*,
   No. CV 99–2062 ....................................................................................................18

*Phoenix Ins. Co. v. Rosen*,
   242 Ill. 2d 48, 949 N.E. 2d 639 (2001) .................................................................14

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev (US), LLC*,
   282 P.3d 1217 (Cal. 2012) ................................................................................12, 14

*Rent-A-Center W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .............................................................................................12, 16

*Rent-A-Ctr., W., Inc. v. Jackson*,
   130 S.Ct. 2772 (2010) .............................................................................................8

*Ross Bros. Constr. Co. v. Int'l Steel Servs., Inc.*,
   283 F.3d 867 (7th Cir. 2002) ...................................................................................8

*Sanchez v. Valencia Holding Co.*,
   353 P.3d 741 (Cal. 2015) ........................................................................................13

*Sanchez v. Valencia Holding Co.*,
   61 Cal. 4th 899 (2015) ............................................................................................14

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) ................................................................................10

*Sharif v. Wellness Int'l Network, Ltd.*,
   376 F.3d 720 (7th Cir. 2004) ....................................................................................2

# TABLE OF CONTENTS
(continued)

**Page**

*Sheller by Sheller v. Frank's Nursery & Crafts, Inc.*,
  957 F. Supp. 150 (N.D. Ill. 1997) ........................................................18

*Sherman v. AT&T, Inc.*,
  No. 11 C 5857, 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) ..................9

*Smith v. Vmware, Inc.*,
  No. 15-cv-03750-THE, 2016 WL 54120 (N.D. Cal. Jan. 5, 2016).........14

*Soucy v. Capital Mgmt. Servs., L.P.*,
  No. C 5935, 2015 WL 404632 (N.D. Ill. Jan. 29, 2015) ........................19

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ...................................................10

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) ...................................................................3

*Toal v. Tardif*,
  178 Cal. App. 4th 1208 (2009) ...............................................................12

*Van Tassell v. United Mktg. Grp., LLC*,
  795 F. Supp. 2d 770 (N.D. Ill. 2011) .....................................................10

*Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*,
  51 F. Supp. 3d 713 (N.D. Ill. 2014) .......................................................17

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
  466 F.3d 577 (7th Cir. 2006) ...................................................................8

**Statutes**

9 U.S.C. § 2 ....................................................................................................8

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...................................... *passim*

Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ..................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(3) ..........................................1, 3, 19

Federaul Rule of Civil Procedure 12(b)(6) ...................................................2

Federal Rule of Civil Procedure 14 ..............................................................17

Defendant Snap Inc. ("Snap") is a technology company that developed and operates the "Snapchat" smart phone application.  Snapchat is a camera application that was created to help people communicate through short videos and images.  Snapchat includes popular features called "Lenses" and "Filters," which allow users to edit the photos and videos they share to include real-time special effects and sounds.  As Snap explains to its users, Lenses and Filters do ***not*** use facial recognition technology to place these special effects.  Instead, they use object recognition technology.  That technology allows Snapchat to identify a nose as a nose or an eye as an eye.  But it does not – and cannot – identify a nose or an eye, let alone a whole face, as belonging to any specific person.

Ignoring Snap's clear disclosures to users, Plaintiff K.F.C., a 14-year old minor, by and through her guardian, Erin Clark ("Plaintiff"), purports to bring this class action against Snap for alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA").  Her claims would fail if adjudicated before this Court because Snapchat's Lens and Filter features do not violate BIPA.  This case, however, does not belong in court.  When Plaintiff created her Snapchat account, she accepted Snap's Terms of Service ("Terms").  Indeed, she accepted the Terms three times as she updated the application over time.  And every version of the Terms accepted by Plaintiff contains an express, mutually binding arbitration agreement.

That agreement provides in relevant part that "[a]ll claims and disputes (whether contract, tort, or otherwise), including all statutory claims and disputes, arising out of or relating to these Terms or the use of Services" must be "resolved by binding arbitration on an individual basis."  The Terms also contain an express waiver of Plaintiff's right to bring a class action lawsuit.  Plaintiff thus expressly agreed to arbitrate her claims against Snap through individual, non-class arbitration.  As such, pursuant to Rule 12(b)(3) and the Federal Arbitration Act, 9 U.S.C. § 1 *et*

*seq.* (the "FAA"), Snap respectfully requests that the Court dismiss Plaintiff's putative class action claims in favor of arbitration proceedings on an individual basis, or in the alternative, stay those claims pending the completion of individual arbitration.[1]

## FACTUAL BACKGROUND

### A.    The Parties

Snap is a technology company that developed and operates the Snapchat mobile application, which is "a camera application ('app') that was created to help people communicate through short videos and images called 'Snaps.'"  Compl. ¶ 2 (citation omitted).

Plaintiff is a minor and citizen of the State of Illinois.  She alleges that she is "a 13-year-old former Snapchat user."  Compl. ¶ 7.  She further alleges that she "downloaded the Snapchat app in Illinois, routinely used Snapchat in Illinois, has used numerous Lenses in her Snaps in Illinois, and has sent from Illinois Snaps with Lens [sic] effects to other Snapchat users."  *Id.*

### B.    Causes of Action

Plaintiff alleges, in conclusory fashion, that two Snapchat features – "Lenses" and "Filters" – utilize "scan[s] of . . . face geometry," which are purportedly regulated by BIPA.  The "Lenses" feature allegedly "allow[s] users to change their appearance . . . in Snaps" and "allow[s] users to apply many effects to their own faces, from cartoonish effects like bug-eyes, face stretching and other distortions, to subtle make-up effects, such as smoothing facial texture, altering eye color, whitening teeth, and softening the skin."  Compl. ¶¶ 18, 28.  The "Filters" feature allegedly

---

[1] Snap is also filing a Motion to Dismiss pursuant to Rule 12(b)(6).  In doing so, Snap does not waive its right to arbitrate.  *See Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("[I]t is well-established that a party does not waive its right to arbitration merely by filing a motion to dismiss.").  Snap requests that its Motion to Compel Arbitration be resolved prior to the Court addressing Snap's Motion to Dismiss.  *See id.* ("An application for arbitration . . . requests the district court to refrain from further action in a suit pending arbitration, and requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement.") (quoting *Texaco Expl. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001)).

"work[s] by acting as a design overlay over Snaps – similar to adding a preexisting frame or overlay to Snaps."  Compl. ¶ 18; *see also* Compl. ¶ 32 ("Filters are similar to Lenses, however Filters are 'frames and artwork' that can be applied to Snaps, whereas Lenses are 'augmented reality experiences friends can play with.'") (citation omitted).

Plaintiff alleges that "when users use Lenses or Filters on the Snapchat app, the app takes a scan of the user's facial geometry from the digital image and videos created when users create Snaps."  Compl. ¶ 61.  She further alleges that she used Lenses to "change the appearance of her face in Snaps," and that "Lenses and Filters collect, capture, or otherwise obtain biometric identifiers, and do not give to users, or receive from users, the informed written consent required by the statute prior to obtaining user's biometric identifiers."  Compl. ¶¶ 7, 20, 34.

Based on these conclusory allegations, Plaintiff asserts three causes of action under BIPA. First, Plaintiff alleges that Snap violated BIPA Section 15(a) by not providing a "publicly available retention schedule or guidelines for permanently destroying users' biometric identifiers." Compl. ¶ 62.  Second, Plaintiff claims Snap violated BIPA Section 15(b) by "collecting, capturing, purchasing, receiving through trade or otherwise obtaining without informed consent Plaintiff's and putative Class members biometric identifiers as described."  Compl. ¶¶ 64–73.  Third, Plaintiff asserts that Snap violated BIPA Section 15(c) by "directly profit[ng] from the collection of users' biometric identifiers and/or biometric information."  Compl. ¶ 102.

### C.   Snap's Terms of Service and Arbitration Agreement

Snap provides its Snapchat application to users subject to Snap's Terms.  Declaration of Michelle Reynolds ("Reynolds Decl.") ¶ 9, attached as **Exhibit A**.[2]  A Snapchat user must accept

---

[2]  On a motion to compel arbitration under the Federal Arbitration Act or ruling on a Rule 12(b)(3) motion to dismiss for improper venue, a district court may consider documents outside and integral to the pleadings, such as the agreements giving rise to the alleged obligation to arbitrate.  *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002).

Snap's Terms to use Snapchat or any Snapchat features, including Lenses and Filters.  *Id.* ¶ 13.
No individual can use Snapchat without first agreeing to Snap's Terms.  *Id.*

Snapchat users expressly agree to the Terms when they download Snapchat on a mobile
device and create a Snapchat account using the app, and when users subsequently upgrade the app.
*Id.* ¶¶ 10, 24, 29.  To create a Snapchat account, a user must first download the app, open it, and
select a "Sign Up" button.  *Id.* ¶ 9.  The user is then presented with a screen to enter their first and
last name and then click "Sign Up & Accept."  *Id.* ¶ 10.  On that screen above the button labeled
"Sign Up & Accept" is the following statement: "By tapping Sign Up & Accept, you acknowledge
that you have read the Privacy Policy and agree to the Terms of Service."  *Id.*  The colored text
provides hyperlinks to Snap's Privacy Notice and Terms, respectively.  *Id.* ¶ 11.  Before a user can
begin using the app, she must click the "Sign Up & Accept" button indicating that they agree to
the Terms in order to create a user account.  *Id.* ¶ 13.  No users are permitted to sign into or use
Snapchat unless they agree to Snap's Terms.  *Id.* ¶ 13.  A user is under no time constraints when
reviewing the Terms before using the app or creating a Snapchat account.  *Id.*  ¶ 12.

Snap sometimes updates the Terms, and when it does so, existing Snapchat users are given
notice of and have to expressly accept the updated Terms before they can upgrade their Snapchat
app to the latest version and use new Snapchat features.  *Id.* ¶¶ 24, 29.  For example, upon
attempting to upgrade the Snapchat app starting in October 2019, users were presented with the
screen below informing them that Snapchat's "Terms of Service and Privacy Policy have changed"
and providing links to both policies.  Users were told that "By continuing to use Snap's services,
you are agreeing to the Terms of Service as of its effective date and acknowledging that you have
read the Privacy Policy."  *Id.* ¶ 29.  Users then had to click "Continue" if they wanted to continue
using the Snapchat application:



*Id.*

Snap's Terms are written in straightforward language, and they make clear right from the top that users are agreeing to a contract and that that contract contains an arbitration provision. The very first section of Snap's Terms states:

> We've drafted these Terms of Service (which we call the "Terms") so you'll know the rules that govern our relationship with you. Although we have tried our best to strip the legalese from the Terms, there are places where these Terms may still read like a traditional contract. There's a good reason for that: These Terms do indeed form a legally binding contract between you and Snap Inc. So please read them carefully.

> By using Snapchat, Bitmoji, or any of our other products or services that link to these Terms (we refer to these collectively as the "Services"), you agree to the Terms. Of course, if you don't agree with them, then don't use the Services.

> ARBITRATION NOTICE: THESE TERMS CONTAIN AN ARBITRATION CLAUSE A LITTLE LATER ON. EXCEPT FOR CERTAIN TYPES OF DISPUTES MENTIONED IN THAT ARBITRATION CLAUSE, YOU AND SNAP INC. AGREE THAT DISPUTES BETWEEN US WILL BE RESOLVED BY MANDATORY BINDING ARBITRATION, AND YOU AND SNAP INC. WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS-ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.

Reynolds Decl. Ex. 2 at 1.  The blue text provides a hyperlink to the arbitration clause contained in the Terms.  *Id.*

Since at least November 2014, Snap's Terms have included an agreement to arbitrate with a class action waiver provision.  Reynolds Decl. ¶¶ 5 – 6.  The current arbitration agreement was in effect on January 4, 2019 – when Plaintiff created her Snapchat account – and provides, in part:

> You and Snap Inc. agree that ***all claims and disputes*** (whether contract, tort, or otherwise), including all statutory claims and disputes, arising out of or relating to these Terms or the use of the Services that cannot be resolved in small claims court will be resolved by binding arbitration on an individual basis, except that you and Snap Inc. are not required to arbitrate any dispute in which either party seeks equitable relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents. To be clear: The phrase "all claims and disputes" also includes claims and disputes that arose between us before the effective date of these Terms.

*Id.* ¶ 18 (emphasis added); *see also* Reynolds Decl. Ex. 2 at 12 ("Waiver of Class or Consolidated Actions").  The Arbitration Agreement further provides:  (1) "[t]he Federal Arbitration Act governs the interpretation and enforcement of this dispute-resolution provision;" (2) "[a]rbitration will be initiated through the American Arbitration Association ('AAA');" and (3) that the hyperlinked "AAA Consumer Arbitration Rules" will govern the arbitration.  *Id.* Ex. 2 at 11.

Snap's Terms also have contained a requirement that all arbitrations must be brought on an individual, rather than a class basis:

> Waiver of Class or Consolidated Actions. ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS. CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED

> WITH THOSE OF ANY OTHER CUSTOMER OR USER. If, however, this waiver of class or consolidated actions is deemed invalid or unenforceable, neither you nor we are entitled to arbitration; instead all claims and disputes will be resolved in a court as set forth in Section 18.

*Id.* Finally, the Terms have contained the following opt-out provision if users do not wish to arbitrate their claims:

> Opt-out. You may opt out of this arbitration agreement. If you do so, neither you nor Snap Inc. can force the other to arbitrate. To opt out, you must notify Snap Inc. in writing no later than 30 days after first becoming subject to this arbitration agreement. Your notice must include your name and address, your Snapchat username and the email address you used to set up your Snapchat account (if you have one), and an unequivocal statement that you want to opt out of this arbitration agreement. You must either mail your opt-out notice to this address: Snap Inc., ATTN: Arbitration Opt-out, 63 Market Street, Venice, CA 90291, or email the opt-out notice to arbitration-opt-out@snap.com.

*Id.* ¶ 21.

### D.    Plaintiff's Agreement to Arbitrate Her Claims

Plaintiff created her Snapchat account on January 4, 2019 and was last active on the Snapchat app as recently as January 22, 2021. *Id.* ¶¶ 7 – 8. When creating her account in January 2019, Plaintiff accepted the September 2017 Terms that were then in effect on the Snapchat app. *Id.* ¶ 15. Plaintiff also accepted the February 2019 Terms on February 23, 2019 and the October 2019 Terms on October 25, 2019, and continued using Snapchat after doing so. *Id.* ¶¶ 27, 32. Plaintiff would not have been able create her Snapchat account or continue using Snapchat after upgrading the Snapchat app unless she clicked an "Accept" or "Continue" box, indicating that she agrees to the Snapchat Privacy Policy and Terms of Services." *Id.* ¶¶ 24, 29. The Terms dated September 2017, February 2019, and October 2019, each contained the same arbitration agreement set forth above, including class action waivers. *Id.* ¶¶ 26, 31. Plaintiff did not "opt out" of arbitration pursuant to the Terms. *Id.* ¶ 33. Accordingly, Plaintiff repeatedly agreed to individual arbitration for all claims or disputes arising out of her "use of the Services" offered by Snap.

# ARGUMENT[3]

The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration, and requires that arbitration agreements be rigorously enforced.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("courts must place arbitration agreements on an equal footing with other contracts.").  Section 4 of the FAA requires courts to compel arbitration "in accordance with the terms of the agreement."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting 9 U.S.C. § 4).

Under the FAA, arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010).  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.  Thus, when deciding a motion to compel arbitration under the FAA, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue."  *Lifescan, Inc. v. Premier Diabetic Servs.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).

Because the Arbitration Agreement is governed by the Federal Arbitration Act, and because Plaintiff's claim falls within the scope of the arbitration agreement, Plaintiff is bound by

---

[3] Questions regarding the validity, enforceability, and scope of an arbitration agreement are generally governed by state law.  *See, e.g., First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Gore v. Allitel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).  Plaintiff's claims are asserted under Illinois law, but Snap's Terms specify that California law applies to "any claims and disputes (whether contract, tort, or otherwise) arising out of or relating to these Terms or their subject matter."  Reynolds Decl. Ex. 2 at 13.  Snap therefore primarily cites California and federal law, though the result here would be the same under Illinois law.  *See Ross Bros. Constr. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 874 (7th Cir. 2002) (an arbitration clause "must be interpreted pursuant to the [contract's] choice of law provision").

its provisions requiring resolution of her claims by binding arbitration, delegating threshold arbitrability issues to the arbitrator, and waiving any right to class action proceedings.

## I.    PLAINTIFF ENTERED INTO A VALID AND ENFORCEABLE ARBITRATION AGREEMENT WITH SNAP.

### A.    Plaintiff Agreed To Arbitrate Her Claims and Disputes With Snap.

Plaintiff agreed to Snap's Terms when she created a Snapchat account on January 4, 2019 and also when she subsequently upgraded the Snapchat app on February 23, 2019 and October 25, 2019. She thereby affirmed her consent to arbitrate all claims and disputes against Snap.  Every version of Snap's Terms in place since Plaintiff created her Snapchat account has contained the same arbitration agreement with a class action waiver.  Reynolds Decl. ¶¶ 26, 31.  By agreeing to the Terms and utilizing the services offered by Snapchat, Plaintiff had actual, constructive, and inquiry notice of the Terms containing the arbitration provision.  She specifically manifested affirmative assent to the Terms.  Therefore, the online agreement between Plaintiff and Snap is enforceable.

In determining whether a party agreed to arbitrate, "courts . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 998 (N.D. Cal. 2012). Contracts formed in online transactions – where customers are apprised of the contract terms and indicate their assent – are enforceable to the same extent as any other contract.  *See Sherman v. AT&T, Inc.*, No. 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012) ("The clickwrap process of checking a box next to hyperlinked terms generally provides adequate notice.").  Indeed, "[c]ourts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract," and that "[t]here is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a

click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016) (collecting cases); *see also Moule v. United Parcel Serv. Co.*, No. 16-cv-00102-JLT, 2016 WL 3648961, at *5 (E.D. Cal. July 7, 2016 (where "Plaintiff had the opportunity to view the Terms and Conditions and clicked the 'Yes' button to process the shipment, the Court finds Plaintiff manifested assent to the UPS Terms when arranging the shipment at issue."); *Crawford v. Beachbody, LLC,* No. 14CV1573, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (an "agreement constitutes a binding contract where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the "I Accept" button and clicks that button.")  In "regularly uphold[ing]" the validity of "clickwrap" agreements, *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011), courts have concluded that making the terms and conditions of an agreement available by hyperlink – as Snap did in its Terms displayed on all mobile devices – constitutes reasonable notice of the agreement's terms.  *See*, *e.g.*, *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018); *Swift v. Zynga Game Network, Inc.,* 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011).

This is precisely how Snap's Terms worked.  Because the Snapchat app contains a clear and conspicuous statement that in order to sign up for the app a user must "read the Privacy Policy and agree to the Terms of Service"  by clicking a link or pressing a button, a reasonable user who completes that process would understand that he or she has manifested assent to the both the Snap Privacy Policy and Terms.  *Johnson v. Uber Techs., Inc.*, No. 16 C 5468, 2018 WL 4503938, at *4–5 (N.D. Ill. Sept. 20, 2018) (enforcing arbitration agreement where plaintiff affirmatively and voluntarily clicked a button appearing next to the Privacy Policy and Terms & Conditions); *see also In re Facebook Biometric Information Privacy Litigation,* 185 F.Supp. 3d 1155, 1166 (N.D.

Cal. May 5, 2016) (enforcing arbitration agreement where user had to "take some action – a click of a dual-purpose box – from which assent might be inferred.  A contract was not foisted upon him simply by passively viewing a website."); *Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099, at *1 (N.D. Ill. May 15, 2020) (enforcing an arbitration provision where plaintiff clicked an "Accept" button followed by "By tapping 'Accept', you agree to use the Shutterfly for Android software and the associated Shutterfly services in accordance with Shutterfly's Terms of Use.")

Moreover, by agreeing to the Terms on at least three separate occasions, Plaintiff necessarily agreed to the arbitration agreement set forth in those Terms.  The Terms tell Snap users not once, but twice, that any claims or disputes against Snap must be brought in individual arbitration.  The very first section of the Terms states:

> ARBITRATION NOTICE: THESE TERMS CONTAIN AN ARBITRATION CLAUSE A LITTLE LATER ON. EXCEPT FOR CERTAIN TYPES OF DISPUTES MENTIONED IN THAT ARBITRATION CLAUSE, YOU AND SNAP INC. AGREE THAT DISPUTES BETWEEN US WILL BE RESOLVED BY MANDATORY BINDING ARBITRATION, AND YOU AND SNAP INC. WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS-ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.

Reynolds Decl. Ex. 2 at 1.  The blue text provides a hyperlink to the full arbitration clause contained in the Terms, which provides:

> You and Snap Inc. agree that ***all claims and disputes*** (whether contract, tort, or otherwise), including all statutory claims and disputes, arising out of or relating to these Terms or the use of the Services that cannot be resolved in small claims court will be resolved by binding arbitration on an individual basis, except that you and Snap Inc. are not required to arbitrate any dispute in which either party seeks equitable relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents. To be clear: The phrase "all claims and disputes" also includes claims and disputes that arose between us before the effective date of these Terms.

*Id.* at ¶ 18 (emphasis added).  The existence of the arbitration agreement was "clear and reasonably conspicuous" to Plaintiff each time accepted the Terms.  *Guadagno v. E*Trade Bank*, 592 F. Supp.

2d 1263, 1271 (C.D. Cal. 2008).  *See also Davis v. Fenton*, 26 F. Supp. 3d 727, 738 (N.D. Ill. 2014).  Plaintiff is bound by her agreement to arbitrate with Snap.

### B.     The Parties' Agreement Is Enforceable.

Both federal and California law reflect a "strong" policy in favor of "enforcing arbitration agreements." *NewNet Commc'n Techs., LLC v. VI E-Cell Tropical Telecom, Ltd.*, 85 F. Supp. 3d 988, 994 (N.D. Ill. 2015); *Armendariz v. Found. Health Psychcare Servs.,* 24 Cal. 4th 83, 96-97 (2000).  As a general rule, courts "will indulge every reasonable intendment to give effect to arbitration proceedings." *Toal v. Tardif*, 178 Cal. App. 4th 1208, 1218 (2009).  An arbitration agreement is unenforceable only "if the agreement is both procedurally and substantively unconscionable." *Naria v. Trover Sols., Inc.,* 967 F. Supp. 2d 1332, 1336 (N.D. Cal. 2013) (citation omitted).  Snap's arbitration agreement with Plaintiff is neither.

The party opposing arbitration bears the burden of proving unconscionability.  *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev (US), LLC,* 282 P.3d 1217, 1224-25 (Cal. 2012); *accord Mitchell v. Verizon Wireless,* No. 05 C 511, 2006 WL 862879, at *2 (N.D. Ill. Mar. 31, 2006).  In her Complaint, Plaintiff does not allege that the arbitration agreement is unconscionable, which should end this inquiry.  But to the extent the Court considers the issue, there is no unconscionability here.  The Court's analysis is limited to whether the arbitration provision is itself unconscionable.  *See Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010). Unconscionability requires "a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Concepcion*, 563 U.S. at 340 (citation omitted).  Snap's arbitration agreement containing a class action waiver is neither.

The arbitration agreement is not procedurally unconscionable because (1) it is not oppressive; and (2) Plaintiff was not surprised by it.  *Pinnacle Museum*, 282 P.3d at 1232.  The

arbitration agreement was not oppressive because Plaintiff had a meaningful choice whether to accept the Terms – she could have chosen to decline those terms, not register for a Snapchat account, and communicate in another manner.  *See Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 650 (Cal. Ct. App. 2007) ("The availability of alternative sources from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice.")

The arbitration provision did not "surprise" Plaintiff.  The Terms containing the arbitration agreement and class waiver were prominently called out and hyperlinked on the account registration and upgrade screens, all readily available to Plaintiff.  Reynolds Decl. ¶¶ 11, 17, 25, 30.  Snap "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [Plaintiff's] attention."  *Sanchez v. Valencia Holding Co.,* 353 P.3d 741, 751 (Cal. 2015); *accord Davis v. Fenton*, 26 F. Supp. 3d 727, 738 (N.D. Ill. 2014) (rejecting plaintiff's argument "that no one informed her that there was an arbitration clause in the agreement or what that arbitration clause meant.")  Nonetheless, Snap did so.

Snap "tried [their] best to strip the legalese from the Terms" – instead including plain English – while making clear the "Terms do indeed form a legally binding contract."  Reynolds Decl. Ex. 2 at 1.  The arbitration agreement is not difficult to find, read, or understand.  The introduction section contains an all-caps paragraph informing users that the terms contain an arbitration provision and class action waiver.  *Id*.  Within that arbitration notice, clicking the colored text, "arbitration agreement" hyperlinks the user directly to the entire arbitration agreement, which is conspicuously displayed under the bolded heading "**Arbitration, Class-Action Waiver, and Jury Waiver.**"  Reynolds Decl. ¶ 17.  The arbitration agreement certainly is not "hidden within a prolix printed form."  *See Morris v. Redwood Empire Bancorp,* 27 Cal. Rptr.

3d 797, 808 (Cal. Ct. App. 2005) ("a clear heading in a contract may refute a claim of surprise"); *Davis*, 26 F. Supp. 3d at 738 (placement, font size, and typeface of arbitration clause did not make it procedurally unconscionable where arbitration provision was not "hidden in a maze of fine print.") (citation omitted); *Brown v. Luxittica Rental N. Am. Inc.,* No. C 7816, 2010 WL 3893820, at *3 (N.D. Ill. Sept. 29, 2010) (arbitration provisions in the middle of a 51-page document was neither hidden nor buried so as to generate procedural unconscionability).  Plaintiff had unlimited time to review the arbitration agreement before deciding whether or not to agree to it, and could also review the Terms at any time through Snap's website or on the Snapchat app.  Reynolds Decl. ¶¶ 12, 28.

The arbitration agreement also is not substantively unconscionable.  It is not one-sided, let alone "so one-sided as to shock the conscience."  *Pinnacle Museum*, 282 P.3d at 1232; *accord Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60, 949 N.E. 2d 639, 647 (2001).  The arbitration agreement is wholly bilateral, as both Snap and the users are required to arbitrate their claims.[4] *Id.* Ex. 2 at 11.   Furthermore, Snap's arbitration provision adopts the rules of a neutral party, the American Arbitration Association ("AAA"), which provides for a neutral arbitrator, a written decision with limited judicial review, and discovery.  *Id.*  Under settled law, the AAA's arbitration procedures are not substantially unconscionable.  *See Smith v. Vmware, Inc.*, No. 15-cv-03750-THE, 2016 WL 54120, at *5 (N.D. Cal. Jan. 5, 2016) (rejecting argument that AAA Rules are substantively unconscionable).  The class waiver is also not unconscionable.  The Supreme Court rejected that argument in *Concepcion*, 563 U.S. at 344.  *See, e.g., Sanchez v. Valencia Holding Co.,* 61 Cal. 4th 899, 907 (2015) (enforcing arbitration clause's class action waiver and explaining

---

[4] The only exception to the arbitration requirement is that both Snap and users "are not required to arbitrate any dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or patents."  Reynolds Decl. Ex. 2 at 11.  This exception, which is not applicable in this case, is also bilateral.

that "the FAA requires enforcement of class waivers" in arbitration agreements); *In re H & R Block Refund Anticipation Loan Litig.*, 59 F. Supp. 3d 903, 910 (N.D. Ill. 2014).

The arbitration agreement is also pro-user in many other ways.  For example, Snap agrees to cover all filing fees, hearing fees, and arbitrator compensation regardless of what arbitral forum is selected.  *Id*.  The agreement also gives users the freedom to pursue claims under $10,000 in small-claims court and allows users to engage in non-appearance arbitration.  *Id.*

All of these characteristics—the bilateral nature of the arbitration provision, the incorporation of a neutral and well-known arbitration association's rules, Snap paying all costs, the option to pursue certain claims in small-claims court, the ability to engage in non-appearance arbitration to avoid travel—show that the arbitration agreement is not substantively unconscionable.  *See O'Quinn v. Comcast Corp.,* No. 10 C 2491, 2010 WL 4932665, at *5-7 (N.D. Ill. Nov. 29, 2010) (no unconscionability where arbitration agreement included cost-effective, consumer friendly provisions).  Because the arbitration agreement is neither procedurally nor substantively unconscionable, the Court must enforce it.

## II.   PLAINTIFF'S CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

Both federal law and California law strongly favor arbitration.  *See Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014); *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 49 Cal. Rptr. 3d 531, 537 (Cal. Ct. App. 2006); *see also Fried Trading Co. v. Austern*, No. 86 C 8223, 1989 WL 57053, at *2 (N.D. Ill. May 22, 1989).

Plaintiff's arbitration agreement encompasses each of her claims in this action.  Snap's arbitration provision covers "***all claims and disputes*** (whether contract, tort, or otherwise), including all statutory claims and disputes, arising out of or relating to these Terms or the use of the Services."  Reynolds Decl. Ex. 2 at 11.  Indeed, as the Seventh Circuit has observed of a similar

provision requiring arbitration of "any claim or dispute . . . relationship, "[i]t would be hard to draft a broader [arbitration] clause." *Carbajal v. H & R Bock Tax Servs., Inc.,* 372 F.3d 903, 904-05 (7th Cir. 2004); *see also Gore v. Alltel Commc'ns,* 666 F.3d 1027, 1036 (7th Cir. 2012) ("Given our broad reading of 'arising out of and relating to,' we are confident that these claims also fall within the scope of the arbitration clause."). Plaintiff's claims arise out of or relate to "the use of the Services" provided by Snap. Compl. ¶ 7. Thus, Plaintiff's claims are plainly within the broad arbitration provision.[5]

Nevertheless, whether Plaintiff's claims fall within the scope of the arbitration agreement is an issue for the arbitrator to decide. *Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012) ("[W]hen parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability.") (citation omitted). The Terms' arbitration provision specifically states that "[t]he arbitrator will decide the jurisdiction of the arbitrator and the rights and liabilities, if any, of you and Snap Inc." Reynolds Decl. Ex. 2 at 12. The Supreme Court has held that when an arbitration agreement "clearly and unmistakably" contains a "delegation provision" – *i.e.*, a clause delegating "threshold issues" of arbitrability to the arbitrator – "the FAA operates on this additional arbitration agreement just as it does any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70 & n.1 (2010) (internal quotation marks omitted). In other words, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as

---

[5] Because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421–22 (7th Cir. 2001) (internal quotation marks omitted).

embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019).

The Terms incorporate the American Arbitration Association's Consumer Arbitration Rules ("AAA Rules"), which are hyperlinked in the Terms. Those rules provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Rule 14, AAA Consumer Rules; *see Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012) ("[W]hen parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability.") (citation omitted). Thus, the parties agreed to delegate to the arbitrator questions regarding the scope of the arbitration agreement. *See Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 719 (N.D. Ill. 2014) ("[W]here the parties agree to arbitration pursuant to the rules of the [AAA], the parties incorporate the AAA's rules into the arbitration agreement.").

## III.   PLAINTIFF CANNOT NOW "DISAVOW" HER ARBITRATION AGREEMENT WITH SNAP IN ORDER TO AVOID ARBITRATION.

In her Complaint, Plaintiff purports to "disaffirm[] and disavow any contract or agreement Snap may say applies to her." Compl. ¶ 7. She cannot do so. Plaintiff's claims must still be arbitrated for at least three separate reasons.

*First*, the parties agreed to delegate threshold issues regarding arbitrability to the arbitrator in the first instance. The "delegation" principle applies where, as here, a plaintiff attempts to void an arbitration agreement based on her status as a minor. *See, e.g.*, *Kuznik v. Hooters of Am., LLC*, No. 1:20-CV-01255, 2020 WL 5983879, at *3 (C.D. Ill. Oct. 8, 2020) (question regarding "Arbitration Agreement [being] invalid because [plaintiff] signed it as a minor . . . is reserved for

the arbitrator"); *Ingram v. Neutron Holdings, Inc.*, No. 3:20-CV- 00037, 2020 WL 2733726, at *6 (M.D. Tenn. May 26, 2020) (whether arbitration provision is void due to party's minority at the time of contracting is a "question of arbitrability").

 ***Second***, even if Plaintiff allegedly "disavowing" the Terms was for the Court to decide, Plaintiff would still be required to arbitrate her claims.  Under both California and Illinois law, a minor cannot accept the benefit of a contract (here, using the Snapchat application) and then later "disavow" the contract that conferred the benefit in an attempt to avoid arbitration.  *Paster v. Putney Student Travel, Inc.*, No. CV 99–2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) ("[Minor plaintiff] cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a clause that do [sic] not suit her."); *see also Sheller by Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 153-54 (N.D. Ill. 1997) ("[T]he privilege of minority . . . is to be used as a shield and not as a sword. . . . Had [Plaintiffs] not signed the employment application which contained the arbitration clause, they would not have been hired by Defendant.  Thus, if the Court were to allow the minor Plaintiffs to disaffirm the contract, Plaintiffs would be retaining the advantage of employment while repudiating that very same contract. The Court cannot permit such a result . . . .") (internal quotation marks and citation omitted).

 ***Third***, while Plaintiff claims that she "ceased using Snapchat prior to the filing of this complaint," Compl. ¶ 7, Snap's records demonstrate that that is not so.  Those records show that Plaintiff used Snapchat as recently as January 22, 2021, when she spent roughly 6 minutes on Snapchat, viewed 30 photos and videos, playing with multiple Lenses, and viewed and sent chat messages.  Reynolds Decl. ¶ 8.  A minor cannot disavow a contract while simultaneously enjoying the benefit provided by the contract.  *See, e.g., E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F.

Supp. 2d 894, 899 (S.D. Ill. 2012) (rejecting minor-plaintiffs' attempt to disaffirm a forum selection clause in Facebook's terms of service while continuing to use Facebook); 5 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 9:14 (4th ed. 1993 & Supp. 2011) ("If an infant enters into any contract subject to conditions or stipulations, the minor cannot take the benefit of the contract without the burden of the conditions or stipulations.").).

Plaintiff cannot avoid the arbitration agreement by purporting to "disavow" it in her Complaint. Her BIPA claims must be arbitrated.

## IV.   THE COURT SHOULD DISMISS THE ACTION IN FAVOR OF ARBITRATION.

Because all the claims set forth in the Complaint are subject to arbitration, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(3) for improper venue. *See Soucy v. Capital Mgmt. Servs., L.P.,* No. C 5935, 2015 WL 404632, *4 (N.D. Ill. Jan. 29, 2015). The Seventh Circuit has "repeatedly affirmed district courts' decisions dismissing suits where all of the claims must be arbitrated according to the agreement." *Id.* at *6. There is a "growing trend favoring dismissal of a case when all the claims are subject to arbitration." *HTG Capital Partners, LLC v. Doe*, No. 15 C 02129, 2016 WL 612861, at *7-8 (N.D. Ill. Feb. 16, 2016). In the alternative, the Court may instead stay this action, pending arbitration of Plaintiff's individual claims in this District. *See, e.g., Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.,* No. 04 C 1190 2007 WL 951943, at *1, 7 (N.D. Ill. Mar. 27, 2007) (granting motion to compel and staying proceedings pending arbitration).

## CONCLUSION

For the foregoing reasons, Snap respectfully asks this Court to grant Snap's motion to compel arbitration and dismiss Plaintiff's claims pending arbitration of the claims on an individual, non-class basis. In the alternative, the Court should stay the claims pending individual arbitration.

Dated: February 12, 2021

Respectfully submitted,

**SNAP INC.**


By: */s/ Elizabeth B. Herrington*
By Its Attorney

Elizabeth B. Herrington
Tyler Zmick (*admission pending*)
Alborz Hassani (*admission pending*)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001
beth.herrington@morganlewis.com
tyler.zmick@morganlewis.com
al.hassani@morganlewis.com

Raechel Keay Kummer (*PHV forthcoming*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
(202) 739-3000

*Counsel for Defendant Snap Inc.*

## **CERTIFICATE OF SERVICE**

I, Elizabeth B. Herrington, hereby certify that on this 12th day of February, 2021, I caused a copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT SNAP INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, STAY CLAIMS  to be served upon all counsel of record via the Court's CM/ECF system.


/s/ *Elizabeth B. Herrington*
Elizabeth B. Herrington