IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| K.F.C., a minor, by and through her guardian, ERIN CLARK, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>SNAP, INC.,<br><br>       Defendant. | Case No. 3:21-cv-00009-DWD<br><br><br>Hon. David W. Dugan |

**DECLARATION OF MICHELLE REYNOLDS**

I, Michelle Reynolds, declare as follows:

1. I am currently employed by Snap Inc. ("Snap") as Director, Accounting. I am over the age of 18 and I submit this declaration in support of Snap's Motion to Compel Arbitration in the above-captioned action. I am authorized to make these statements on behalf of Snap. The facts set forth herein are known to me personally, and, if called as a witness, I could and would testify competently thereto.

2. In my capacity as Director, Accounting I am familiar with Snap's operations and also have access to company records, including user account, registration records, and applicable terms of service documents.

3. Snap's flagship product, Snapchat, is a camera application that was created to help people communicate through short videos and images. Snap calls each of those short videos or images a Snap.

4. Snapchat introduced the Lenses feature on September 15, 2015, via an upgrade to the Snapchat app.

5. Since the Lenses feature was introduced on September 15, 2015, there have been six versions of Snap's Terms of Service ("Terms") in effect: (1) terms of use effective November 17, 2014 ("November 2014 Terms"); (2) terms of service effective October 28, 2015 ("October 2015 Terms"); (3) terms of service effective March 29, 2016 ("March 2016 Terms"); (4) terms of service effective September 26, 2017 ("September 2017 Terms"); (5) terms of service effective February 18, 2019 ("February 2019 Terms"); and (6) terms of service effective October 30, 2019 ("October 2019 Terms.")

6. All six versions of the Terms contain an arbitration agreement.

### Plaintiff's Account

7. Plaintiff's counsel provided Snap with Plaintiff's Snapchat username on January 27, 2021.

8. Based on Snap records, Plaintiff created her Snapchat account on January 4, 2019 and was last active on the application as recently as late January 2021. For example, on January 22, 2021, Plaintiff spent roughly 6 minutes on Snapchat, viewing 30 snaps, playing with multiple Lenses, and viewing and sending chat messages.

### Account Creation

9. Snapchat users expressly agree to the Terms when they download Snapchat on a smartphone and register to use Snapchat using the app. When the user downloads the Snapchat application and opens it for the first time, the user is first required to either "Sign Up" or "Login" to an account; clicking the "Sign Up" button allows a new user to create a user account.

10. The user is then presented with a screen to enter their first and last name and then click "Sign Up & Accept." On that screen above the button labeled "Sign Up & Accept" is the following statement: "By tapping Sign Up & Accept, you acknowledge that you have read the Privacy Policy and agree to the Terms of Service."

11. The colored text provides hyperlinks that the user can click to access, review, and print the Terms and Privacy Policy.

12. A user is under no time constraints when reviewing the Terms before using the app or creating a Snapchat account.

13. Users must click the "Sign Up & Accept" button indicating that they agree to the Terms in order to create a user account and use Snapchat. No users are permitted to sign into or

use Snapchat unless they agree to Snap's Terms. A true and correct copy of a screenshot of this screen is attached hereto as Exhibit 1 and reproduced below.



## September 2017 Terms

14. The September 2017 Terms were in effect from September 26, 2017, until they were updated on February 18, 2019. A true and correct copy of the September 2017 Terms is attached hereto as Exhibit 2.

15. As described above, Plaintiff would not have been able to create her account without accepting these Terms. Based on Snap's records, Plaintiff accepted the September 2017 Terms on January 4, 2019 when she created a Snapchat account.

16. The September 2017 Terms contain an arbitration agreement. The introduction section contains an all-caps paragraph informing users that the terms contain an arbitration provision and class action waiver:

> ARBITRATION NOTICE: THESE TERMS CONTAIN AN ARBITRATION CLAUSE A LITTLE LATER ON. EXCEPT FOR CERTAIN TYPES OF DISPUTES MENTIONED IN THAT ARBITRATION CLAUSE, YOU AND SNAP INC. AGREE THAT DISPUTES BETWEEN US WILL BE RESOLVED BY MANDATORY BINDING ARBITRATION, AND YOU AND SNAP INC. WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS-ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.

17. The colored text provides a hyperlink directly to the entire arbitration agreement.

18. The arbitration agreement states that:

> You and Snap Inc. agree that all claims and disputes (whether contract, tort, or otherwise), including all statutory claims and disputes, arising out of or relating to these Terms or the use of the Services that cannot be resolved in small claims court will be resolved by binding arbitration on an individual basis, except that you and Snap Inc. are not required to arbitrate any dispute in which either party seeks equitable relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents. To be clear: The phrase "all claims and disputes" also includes claims and disputes that arose between us before the effective date of these Terms.

19. The arbitration agreement provides that arbitration will be "initiated through the American Arbitration Association ('AAA') and will be governed by the AAA Consumer Arbitration Rules, available here as of the date of these Terms, or by calling the AAA…"

20. The colored text provides a hyperlink directly to the AAA Consumer Arbitration Rules.

21. The arbitration agreement also contains a clause allowing Snapchat users to opt out of the arbitration agreement and to continue to use Snap services. The clause states as follows:

> Opt-out. You may opt out of this arbitration agreement. If you do so, neither you nor Snap Inc. can force the other to arbitrate. To opt out, you must notify Snap Inc. in writing no later than 30 days after first becoming subject to this arbitration agreement. Your notice must include your name and address, your Snapchat username and the email address you used to set up your Snapchat account (if you

have one), and an unequivocal statement that you want to opt-out of this arbitration agreement. You must either mail your opt-out notice to this address: Snap Inc., ATTN: Arbitration Opt-out, 63 Market Street, Venice, CA 90291, or email the opt-out notice to arbitration-opt-out@snap.com

22. The arbitration agreement also contains a clause that notes "[i]f you choose to arbitrate with Snap Inc., you will not have to pay any fees to do so. That is because Snap Inc. will reimburse you for your filing fee and the AAA's Consumer Arbitration Rules provide that any hearing fees and arbitrator compensation are our responsibility."

**February 2019 Terms**

23. The February 2019 Terms were in effect from February 18, 2019, until they were updated on October 30, 2019. A true and correct copy of the February 2019 Terms is attached hereto as Exhibit 3.

24. Starting February 18, 2019, all existing users who upgraded the Snapchat app were presented with a screen informing them that Snap has "updated our Terms of Service," providing a link to the Terms, asking users to "Please read them," and requiring that the user click "Accept"



before they could continue using Snap services.  A true and correct copy of that screen is attached as Exhibit 4, and reproduced below.

25. The colored text provides hyperlinks to Snap's updated Terms.

26. With the exception of a change to the mailing address for the opt-out provision, the arbitration notice and arbitration agreement in the February 2019 Terms are identical to those in the September 2017 Terms.

27. Based on Snap's records, Plaintiff accepted the February 2019 Terms on February 23, 2019.

### October 2019 Terms

28. The October 2019 Terms became effective on October 30, 2019 and remain in effect as of the date of this declaration.  A true and correct copy of the October 2019 Terms is attached hereto as Exhibit 5.  The October 2019 Terms are also presently available on Snap's website, https://snap.com/en-US/terms, and linked through the settings page on the Snapchat app.

29. Starting October 30, 2019, all existing users who upgraded the Snapchat app were presented with a screen informing them that Snap was "updating our Terms of Service and Privacy Policy," providing links to both policies, asking users to "Please read both", and requiring that the user click "Continue" before they could continue using Snap services.  The screen notes, "By continuing to use Snap's services, you are agreeing to the Terms of Service as of its effective date and acknowledging that you have read the Privacy Policy."  A true and correct copy of that screen is attached as Exhibit 6, and reproduced below.



30. The colored text provides hyperlinks to Snap's Privacy Policy and Terms, respectively.

31. With the exception of a change to the capitalization of "Snap Inc.," the arbitration notice and arbitration agreement in the October 2019 Terms are identical to those in the September 2017 Terms and February 2019 Terms.

32. Based on Snap's records, Plaintiff accepted the October 2019 Terms on October 25, 2019.

33. K.F.C. or Erin Clark did not send an opt-out notice to Snap pursuant to the September 2017 Terms, February 2019 Terms, or the October 2019 Terms.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 11, 2021.

DocuSigned by:
*Michelle Reynolds*
B61DFC7069C0499...
Michelle Reynolds