**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| K.F.C., a minor, by and through her guardian, ERIN CLARK, individually and on behalf of all others similarly situated, | Case No. 3:21-cv-00009-DWD |
| Plaintiff, | |
| v. | Hon. David W. Dugan |
| SNAP INC., | |
| Defendant. | |

**DEFENDANT SNAP INC.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS RULE 12(B)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ........................................................................................................ 2

      A.  Snap's Lenses and Filters Features. ................................................................. 2

      B.  The Illinois Biometric Information Privacy Act. ............................................ 4

      C.  Snap's Alleged Conduct. ................................................................................. 5

ARGUMENT ............................................................................................................................... 6

    I.    PLAINTIFF'S BIPA CLAIMS SHOULD BE DISMISSED BECAUSE SHE
        FAILS TO PLAUSIBLY ALLEGE SNAP "COLLECTED" OR
        "POSSESSED" HER "BIOMETRIC INFORMATION" OR "BIOMETRIC
        IDENTIFIERS." ................................................................................................. 7

    II.   PLAINTIFF'S SECTION 15(C) CLAIM SHOULD BE DISMISSED
        BECAUSE SHE FAILS TO PLAUSIBLY ALLEGE SNAP "PROFITED"
        FROM HER "BIOMETRIC INFORMATION" OR "BIOMETRIC
        IDENTIFIERS." ................................................................................................. 9

CONCLUSION ........................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................................6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................................6

*Brooks v. Ross,*
   578 F.3d 574 (7th Cir. 2009) ..................................................................................6

*Fernandez v. Kerry, Inc.,*
   2020 WL 7027587 (N.D. Ill. Nov. 30, 2020) .........................................................9

*Hazlitt v. Apple Inc.,*
   2020 WL 6681374 (S.D. Ill. Nov. 12, 2020) ..........................................................9

*Heard v. Becton, Dickinson & Co.,*
   440 F. Supp. 3d 960 (N.D. Ill. 2020) ..............................................................8, 10

*Jackson v. Bank of Am. Corp.,*
   711 F.3d 788 (7th Cir. 2013) ..................................................................................6

*Kloss v. Acuant, Inc.,*
   2020 WL 2571901 (N.D. Ill. May 21, 2020)......................................................8, 9

*Namuwonge v. Kronos, Inc.,*
   418 F. Supp. 3d 279 (N.D. Ill. 2019) .....................................................................8

*Nelson v. Monroe Reg'l Med. Ctr.,*
   925 F.2d 1555 (7th Cir. 1991) ................................................................................6

*Pooh-Bah Enter., Inc. v. Cnty. of Cook,*
   905 N.E.2d 781 (Ill. 2009).......................................................................................9

*Sharif v. Wellness Int'l Network, Ltd.,*
   376 F.3d 720 (7th Cir. 2004) ..............................................................................1, 2

*Talley v. LaFlamme,*
   2020 WL 2308258 (S.D. Ill. May 8, 2020)............................................................7

**Statutes**

Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................1, 6

Defendant Snap Inc. ("Snap") is a technology company that developed and operates "Snapchat," a smart phone camera application that helps people communicate through short videos and images called "Snaps." Snap offers many creative tools that allow its community members to express themselves through Snaps they send to others. Two of Snap's popular features, called "Lenses" and "Filters," allow users to edit photos and videos to include real-time special effects and sounds. For example, users can add rainbows coming out of their mouths, flower crowns atop their heads, and tears streaming from their eyes.

As Snap explains to its users in its online Privacy Policy, Lenses and Filters do ***not*** use facial recognition technology to place these special effects on photos or videos. Rather, Snapchat uses object recognition technology that allows Lenses and Filters to identify a nose as a nose or an eye as an eye; but the technology does not—and cannot—identify a nose or an eye, let alone a whole face, as belonging to any specific person. No user information obtained using Snap's object recognition technology is ever sent to Snap; instead, it remains solely on the user's phone.

Plaintiff, a 14-year-old minor, has used Snapchat since January 4, 2019. She frequently uses both the Lenses and Filters features when communicating with others. Although Snapchat's features do not use or collect any biometric information or identifiers, Plaintiff purports to bring a class action against Snap for alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"). Plaintiff asserts Snap failed to comply with the notice and consent requirements set forth in BIPA Sections 15(a) and 15(b) and "profited" from Plaintiff's "biometric identifiers," in alleged violation of BIPA Section 15(c).

This Court should dismiss Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) for two primary reasons:[1]

*First*, Plaintiff fails to plausibly allege that Snap "collected" or "possessed" either her "biometric information" or "biometric identifiers."   Plaintiff alleges that she used Snapchat's Lenses feature, which allegedly works by "photoshop[ping] video chats and messages in real time."  ECF No. 1-1, Compl. ¶ 21 (citation omitted).  Plaintiff, however, does not (and cannot) allege any facts demonstrating that Snap actually "collects" or "possesses" any biometric information or identifiers supposedly created by the Lenses or Filters features on her phone.  Her conclusory allegations parroting BIPA's statutory language fail to plead facts sufficient to state a claim under BIPA Sections 15(a)–(c).

*Second*, the Court should also dismiss Plaintiff's Section 15(c) claim because Plaintiff has not pleaded any facts alleging that Snap ever "profited" from her "biometric information" or "biometric identifiers."

## FACTUAL BACKGROUND

### A.  Snap's Lenses and Filters Features.

Snapchat is "a camera application that was created to help people communicate through short videos and images called 'Snaps.'"  Compl. ¶ 17.  Lenses and Filters are "two very popular features that allow users to add special effects to their Snaps, including editing their appearances, as well as their voices."  *Id.* ¶ 18.  For example, Plaintiff alleges that she used a "Devil's Heart"—

---

[1] Snap is also filing a Motion to Compel Arbitration (ECF No. 25) and does not waive its right to arbitrate by filing this Motion to Dismiss.  *See Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("[I]t is well-established that a party does not waive its right to arbitration merely by filing a motion to dismiss.").  Snap requests that its Motion to Compel Arbitration be resolved before the Court addresses Snap's Motion to Dismiss.  *See id.* ("An application for arbitration . . . requests the district court to refrain from further action in a suit pending arbitration.") (quoting *Texaco Expl. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001)).

a "Snapchat Lens that alters the image of a person's face so that she appears to have freckles on the nose and cheeks, as well as devil's horns on the forehead above the eyes." *Id.* ¶ 20.

Filters "work by acting as a design overlay over Snaps—similar to adding a preexisting frame or overlay to Snaps." *Id.*  Snapchat users can use many default Lenses and Filters that are provided within the Snapchat application on their phones. *Id.* ¶ 19.  They also can create their own custom Lenses and Filters using Snap's Lens Studio, which is a program offered by Snap for free download. *Id.*

Plaintiff quotes Snap's website throughout her Complaint. *See id.* at pp. 2, 6, 8–10, 12. Plaintiff alleges that Snapchat is "governed by its Terms of Service," *id.* ¶ 40—terms that include a hyperlink to Snap's Privacy Policy.  Snap, *Snap Inc. Terms of Service* (eff. Oct 30, 2019), https://snap.com/en-US/terms (Section 5 ("Privacy"): "Your privacy matters to us. You can learn how we handle your information when you use our Services by reading our Privacy Policy."). Snapchat users must consent to Snap's Terms of Service and a robust Privacy Policy before they may use Snapchat.

Snap's Privacy Policy hyperlinks to a product-specific "Privacy by Product" section explaining the technology behind Lenses and Filters.  Snap, *Privacy by Product*, https://snap.com/en-US/privacy/privacy-by-product (last visited Feb. 12, 2021) (attached as **Exhibit A**); *see also* Compl. ¶ 35 (citing Snap's "Privacy by Product" section).  Snap's Privacy by Product description makes clear that Lenses only employs "object recognition," which is "an algorithm designed to help a computer generally understand what objects are in an image." Ex. A at 5.  In describing the Lenses product, Snap goes on to explain that:

> But, object recognition isn't the same as facial recognition.  While Lenses can tell what is or isn't a face, ***they don't recognize specific faces***!

*Id.* (emphasis added).  Lenses are used on a camera screen before taking a Snap.  *See* SEC, Am. No. 3 to Snap Inc.'s Form S-1 at 99 (Feb. 24, 2017) (excerpt attached as **Exhibit B**).  When a user taps on the screen, the camera focuses and detects objects in the scene.  *Id.*  Lenses are interactive animations that are then overlaid on a person's face or the world around them.  *Id.*

Lenses and Filters features do not involve the use of either "biometric information" or "biometric identifiers;" no such biometrics are ever sent to Snap's servers.  In fact, the data created by Lenses or Filters never even leaves a user's device.  Plaintiff does not claim otherwise, as she alleges that Lenses functions in "real time," Compl. ¶ 21, demonstrating that any alleged biometric data remains on a user's device and not on any server operated by Snap.

### B.      The Illinois Biometric Information Privacy Act.

The Illinois General Assembly enacted BIPA in 2008 to address the growing use of biometric technology "in the business and security screening sectors" in Illinois. 740 ILCS 14/5(a). The General Assembly found that "[m]ajor national corporations ha[d] selected the City of Chicago and other locations in [Illinois] as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b).  The Illinois legislature also found that consumers had concerns about the "use of biometrics when such information is tied to finances" and were "deterred from partaking in biometric identifier-facilitated transactions," in part because of the "limited State law regulating the collection, use, safeguarding, and storage of biometrics."  740 ILCS 14/5(d), (e).

BIPA addresses these concerns by regulating the collection, possession, and storage of certain biometric identifiers and information, while expressly excluding coverage of other data. The statute defines "biometric identifier" using a short, exclusive list of personal data: "'[b]iometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face

geometry." 740 ILCS 14/10. "'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* Section 15(a) requires private entities that possess biometric data to create and follow a public retention schedule and destruction guidelines regarding such data. Section 15(b) requires private entities that "collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . biometric identifier or biometric information" to first (1) inform the person of that collection "in writing"; (2) inform the person "in writing of the specific purpose and length of term" regarding the collection; and (3) obtain a "written release" from the person. 740 ILCS 14/15(b). Section 15(c) further prohibits any private entity "in possession of a biometric identifier or biometric information" from "sell[ing], leas[ing], trad[ing], or otherwise profit[ing] from a person's . . . biometric identifier or biometric information." 740 ILCS 14/15(c).

**C.     Snap's Alleged Conduct.**

Plaintiff does not allege that Snap ever collected or possessed her "biometric information." *See* Compl. ¶ 37 (conceding Plaintiff "does not allege that Snap utilizes facial recognition"). Instead, Plaintiff claims Snap collected only her "biometric identifiers"—allegedly, "scan[s] of . . . face geometry." *Id.* ¶¶ 61–62, 68–72, 77 (alleging in Counts I–III that Snap collects and possesses "biometric identifiers," not "biometric information").

Plaintiff alleges that Snapchat's Lenses and Filters utilize "scan[s] of . . . face geometry." *Id.* ¶¶ 26, 31. Plaintiff claims that "when users use Lenses or Filters on the Snapchat app, the app takes a scan of the user's facial geometry from the digital image and videos created when users create Snaps." *Id.* ¶ 61. She further alleges—in conclusory fashion—"Lenses and Filters collect, capture, or otherwise obtain biometric identifiers, and do not give to users, or receive from users, the informed written consent required by the statute prior to obtaining user's biometric identifiers." *Id.* ¶¶ 7, 20, 34.

Based on these threadbare allegations, Plaintiff alleges that Snap violated three separate sections of BIPA: (1) BIPA Section 15(a) by not providing a "publicly available retention schedule or guidelines for permanently destroying users' biometric identifiers," *id.* ¶ 62; (2) BIPA Section 15(b) by failing to inform or receive a written release from Plaintiff before collecting her biometric identifiers, *id.* ¶¶ 67–71; and (3) BIPA Section 15(c) by "directly profit[ng] from the collection of users' biometric identifiers." *Id.* ¶ 102.

## ARGUMENT

Rule 12(b)(6) requires dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To plead a viable cause of action, the allegations must transcend the "speculative," "conceivable" and "possible" and must "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 566–67, 570 (2007).  The Court must disregard "legal conclusions" and "conclusory statements" and must scrutinize factual allegations to ensure that they are more than "merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

A plaintiff cannot satisfy *Twombly* by "merely parrot[ing] statutory language of the claims that [she is] pleading . . . rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 794 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555).  Similarly, the court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *See Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1559 (7th Cir. 1991).

I.    **PLAINTIFF'S BIPA CLAIMS SHOULD BE DISMISSED BECAUSE SHE FAILS TO PLAUSIBLY ALLEGE SNAP "COLLECTED" OR "POSSESSED" HER "BIOMETRIC INFORMATION" OR "BIOMETRIC IDENTIFIERS."**

Plaintiff's claims are all predicated on Snap collecting, capturing, possessing, or otherwise obtaining Plaintiff's "biometric information" or "biometric identifiers." *See* Compl. ¶¶ 57–78; 740 ILCS 14/15(a)–(c).  Thus, to state a claim Plaintiff must allege facts that Snap somehow obtained or gained control over her biometrics.  *See e.g.*, Merriam-Webster Dictionary (2021) (defining "collect" as "to gain or regain control of" and defining "capture" as "to take captive" or "to gain control of especially by force")  Plaintiff fails to plausibly allege Snap ever did so, and therefore she fails to state a claim of a BIPA violation.

Plaintiff asserts that the Lenses feature works by "photoshop[ping] video chats and messages in real time."  Compl. ¶ 21 (citation omitted).  She does not allege how Snap supposedly collects or otherwise obtains any user data created on their phone using Lenses during this purported "photoshop[ping]" or otherwise.  Nor does she allege facts describing how Snap supposedly collects or otherwise obtains any user data created with the Filters feature.  The evidence in this case will show that Snap does not collect or possess any user's "biometric information" or "biometric identifiers."  Even if these Snapchat features involved biometrics (they do not), such information would never leave the user's device.  Therefore, the user's biometrics could not be collected by Snap or anyone else.

Simply using Lenses to take a Snap or adding a Filter to a Snap does not require the collection or possession of biometric identifiers or information, and Plaintiff does not contend otherwise.  Instead, where she uses the word "collect" in her Complaint, she merely parrots the statutory language in conclusory allegations devoid of factual content, which is inadequate to state a claim.  *See, e.g., id.* ¶¶ 34, 42 (concluding without factual support that "Lenses and Filters collect, capture, or otherwise obtain biometric identifiers"); *see also Talley v. LaFlamme*, 2020 WL

2308258, at *2 (S.D. Ill. May 8, 2020) (complaint passes muster only when supported by "factual content").

BIPA Section 15(b) requires private entities that "collect" an individual's biometric data to first: (1) inform the individual "in writing that a biometric identifier . . . is being collected;" (2) inform the individual "in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected;" and (3) receive "a written release executed by the subject." 740 ILCS 14/15(b).  But these clauses are not triggered unless the predicate is satisfied— the private entity must "collect" an individual's biometric data for the requirements to apply. Plaintiff has not adequately alleged that Section 15(b) applies to Snap because Plaintiff does not plausibly allege that any entity—let alone Snap—"collected" her "biometric information" or "biometric identifiers" in connection with the Lenses or Filters features.[2]

In *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020), the Court made clear that "for Section 15(b)'s requirements to apply, an entity must, at a minimum, take an active step to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data." *See also Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing Section 15(b) claim because the allegation did not "plausibly allege that Kronos collected, captured, or otherwise obtained" the plaintiff's biometric information) (internal citations omitted); *Kloss v. Acuant, Inc.*, 2020 WL 2571901, at *3 (N.D. Ill. May 21, 2020) (dismissing Section 15(b) claim brought against provider of "biometric enabled verification services," including a "Biometric Facial Recognition & Match Software" mobile application, where plaintiff failed to allege facts

---

[2] Nor could Plaintiff make such an allegation because that is not how Snap's products work.  As noted, Snap's website makes clear that the Lenses filter, allegedly used by Plaintiff, uses only "object recognition." This is not the same as "facial recognition," but is instead an algorithm designed to help a computer generally understand what objects are in an image. *See* Ex. A at 5.  The evidence in the case will also show that "object recognition" information is never sent to Snap's servers.

regarding defendant's purported "collection" of biometrics).  Similar to the plaintiff in *Heard*, Plaintiff here fails to allege any facts demonstrating that Snap collected biometric information or identifiers—let alone that Snap took "an active step" to do so.  *Heard*, 440 F. Supp. 3d at 966. Plaintiff thus fails to allege conduct that would subject Snap to the informed consent requirements of Section 15(b).

Plaintiff's BIPA Section 15(a) and 15(c) claims—which turn on Snap's alleged "possession" of Plaintiff's biometrics—fail for the same reason.  Plaintiff fails to adequately allege facts that Snap "possess[ed]" any biometric information or identifiers she created in connection with the Lenses or Filters features.  *See, e.g.*, *id.* (dismissing claim that did not allege "how the data made its way" to defendant's systems); *Kloss*, 2020 WL 2571901, at *3 (dismissing BIPA claim because "barebone factual support and recitation of statutory language" does not satisfy pleading burden); *contrast Hazlitt v. Apple Inc.*, 2020 WL 6681374, at *9–10 (S.D. Ill. Nov. 12, 2020) ("[p]laintiffs plausibly allege[d] that Apple collected or possessed their data through the Photos app on their Apple devices" where plaintiffs claimed that data was stored on Apple device "that Apple alone can access").  For these reasons, this Court should dismiss with prejudice Plaintiff's Complaint for failure to state any BIPA claim.

## II.   PLAINTIFF'S SECTION 15(C) CLAIM SHOULD BE DISMISSED BECAUSE SHE FAILS TO PLAUSIBLY ALLEGE SNAP "PROFITED" FROM HER "BIOMETRIC INFORMATION" OR "BIOMETRIC IDENTIFIERS."

Plaintiff mischaracterizes the term "profit" under Section 15(c) and fails to state a claim. Plaintiff alleges only that Snap is "profiting" from Plaintiff's biometrics through the general commercial success of its social media products.  *See* Compl. ¶¶ 41–43.  But Section 15(c) does not prohibit profiting from a social media product.  To the contrary, Section 15(c) addresses only entities that "sell, lease, trade, or otherwise profit from a person's . . . biometric identifier." 740 ILCS 14/15(c).  Section 15(c)'s four verbs—"sell, lease, trade, or otherwise profit"—all

contemplate the direct provision of biometrics in exchange for money.  *Id.*  "[W]hen a statutory clause specifically describes several classes of . . . things and then includes 'other . . . things,' the word 'other' is interpreted to mean 'other such like.'"  *Pooh-Bah Enter., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009); *see also Fernandez v. Kerry, Inc.*, 2020 WL 7027587, at \*1 (N.D. Ill. Nov. 30, 2020) ("[s]ales of biometric information are forbidden" under Section 15(c)); *Hazlitt*, 2020 WL 6681374, at \*7 ("[B]y its plain language, section 15(c) clearly prohibits profiting from 'a person's or a customer's' biometric identifier or biometric information, not the general sales of devices equipped with facial recognition technology.") (citation omitted).

The legislative history also shows that BIPA Section 15(c) prohibits the ***direct sale of biometrics*** for profit, not the indirect "profit" from generating advertising revenue by utilizing allegedly "biometric" features like Lenses.  *See* Ill. House Transcript, 2008 Reg. Sess. No. 276 at 112 (expressing privacy concerns after a "Bankruptcy Court approved the sale of [a] Pay By Touch database" containing Illinois customers' biometric information and showing legislature intended for Section 15(c) to "prohibit[] the ***sale*** of biometric information") (emphasis added) (excerpt attached as **Exhibit C**); *see also Heard*, 440 F. Supp. 3d at 966 (noting that "Pay By Touch's bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records could be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens") (internal quotation marks and citation omitted).

Plaintiff does not allege that Snap directly sold her "biometric information" or "biometric identifiers" for profit.  Indeed, she cannot allege this because (as explained above) Snap does not even collect or possess Plaintiff's biometric information or identifiers, and therefore does not have such biometrics to sell.  Instead, she simply alleges that particular features that Snap provides in its app are "an important driver of Snap's revenues, profits, and growth," Compl. ¶ 77; but this is

insufficient to state a Section 15(c) claim.  Even assuming *arguendo* that Snap did collect users'

biometric information (which it does not, and which Plaintiff has not adequately alleged),

Section 15(c) does not prohibit collecting biometric information and simultaneously making

money from the product through which such biometric information was obtained.   Rather,

Section 15(c) prohibits profiting ***directly from the biometric information itself***, via the sale, lease,

or trade (or other similar transaction) of such biometric information.   Plaintiff does not even

purport to allege that Snap profited from her biometric information in this way, and the Court

should therefore dismiss Plaintiff's Section 15(c) claim with prejudice.

**CONCLUSION**

For the foregoing reasons, Snap respectfully requests that this Court dismiss Plaintiffs'

Complaint with prejudice.

Dated: February 12, 2021         Respectfully submitted,

                                     SNAP INC.

                                  By:  */s/ Elizabeth B. Herrington*
                                       By Its Attorney

                                     Elizabeth B. Herrington
                                     Tyler Zmick (*admission pending*)
                                     Alborz Hassani (*admission pending*)
                                     MORGAN, LEWIS & BOCKIUS LLP
                                     77 West Wacker Drive
                                     Chicago, IL  60601-5094
                                     Telephone: +1.312.324.1000
                                     Facsimile: +1.312.324.1001
                                     beth.herrington@morganlewis.com
                                     tyler.zmick@morganlewis.com
                                     al.hassani@morganlewis.com

                                     Raechel Keay Kummer (*PHV forthcoming*)
                                     1111 Pennsylvania Avenue, NW
                                     Washington, DC 20004-2541
                                     (202) 739-3000

                                     *Counsel for Defendant Snap Inc.*

## CERTIFICATE OF SERVICE

I, Elizabeth B. Herrington, hereby certify that on this 12th day of February, 2021, I caused a copy of the foregoing DEFENDANT SNAP INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS to be served upon all counsel of record via the Court's CM/ECF system.

/s/ Elizabeth B. Herrington
Elizabeth B. Herrington