IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| K.F.C., a minor, by and through her guardian, ERIN CLARK, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SNAP INC.,<br><br>　　　　　　　　Defendant. | Case No. 3:21-cv-00009-DWD<br><br>Hon. David W. Dugan |

**DEFENDANT SNAP INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, STAY CLAIMS**

Exceptional circumstances compel Snap to file this short, targeted reply brief in support of its Motion.[1] Without evidentiary support, Plaintiff's opposition argues that she "disavowed" her agreement to arbitrate by allegedly discontinuing use of the Snapchat app in November 2020 and removing it from her phone. Snap's declarations and records show, however, she has continued to use the app in both January and February 2021 – including *after* the date Snap filed its Motion on February 12, 2021.

In light of the fact that Plaintiff undisputedly entered into the arbitration agreement with Snap, an arbitrator should decide the arbitrability of this case. But regardless of whether an arbitrator or the Court decides the issue, a minor cannot accept the benefit of a contract (here, using Snapchat) while claiming to "disavow" the contract to avoid agreed-upon arbitration. Contrary to Plaintiff's argument, enforcing Snap's Terms by compelling Plaintiff to arbitration does not violate Illinois public policy.

## ARGUMENT

### I. THE PARTIES AGREED TO DELEGATE THRESHOLD ISSUES OF ARBITRABILITY TO THE ARBITRATOR.

Plaintiff agreed to Snap's Terms when she opened a Snapchat account and used and upgraded the Snapchat application. ECF No. 26-1, Reynolds Decl. ¶¶ 15, 27, 32. Whether Plaintiff's BIPA claims fall within the scope of the Terms' arbitration agreement is for the arbitrator to decide pursuant to the Terms' delegation provision. *See Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012).

In asserting that the Court (rather than the arbitrator) should decide questions of arbitrability, Plaintiff incorrectly claims "no contract has been formed" between Plaintiff and Snap.

---

[1] For ease of reference, Snap refers to its Motion to Compel Arbitration (ECF No. 25) and its supporting Memorandum of Law (ECF No. 26) collectively as its "Motion to Compel" or "Motion." In addition, all capitalized terms used herein have the same definition as in Snap's Motion to Compel.

ECF No. 37, Opp'n at 4–6.  In so arguing, Plaintiff conflates the issue of **contract formation** with the issue of whether Plaintiff "disavowed" the contract that was unquestionably formed between the parties.  Where, as here, the arbitration provision has a delegation clause, the arbitrator (not the Court) decides whether a minor-plaintiff "disavowed" a contract based on her status as a minor.  *See, e.g.*, *Kuznik v. Hooters of Am., LLC*, No. 1:20-CV-01255, 2020 WL 5983879, at *3 (C.D. Ill. Oct. 8, 2020) (question regarding "Arbitration Agreement [being] invalid because [plaintiff] signed it as a minor . . . is reserved for the arbitrator").

Plaintiff asserts that Snap's Terms do not contain a delegation clause, arguing that the Terms' statement that "[t]he arbitrator will decide the jurisdiction of the arbitrator" is "vague" and "falls far short of what courts have held to constitute an unmistakable delegation of the gateway issue of arbitrability."  Opp'n at 7 (citation omitted).  Contrary to Plaintiff's suggestion, the delegation clause language itself is clear.  Plaintiff also ignores that in addition to the quoted delegation provision, Snap's Terms incorporate the hyperlinked AAA Consumer Arbitration Rules, Reynolds Decl. ¶ 19, which explicitly state "[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part."  Rule 14, AAA Consumer Rules.  "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).  By explicitly delegating to the arbitrator authority to "decide the jurisdiction of the arbitrator," **and** incorporating the AAA Rules, the parties agreed to delegate to the arbitrator the question whether the arbitration clause is enforceable, including whether Plaintiff allegedly "disavowed" the Terms.  Reynolds Decl. Ex. 2 at 12; *see, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  Indeed, courts hold that incorporation of the AAA Rules

*alone* – without any additional statement regarding the arbitrator's authority – suffices to delegate threshold issues of arbitrability. *See, e.g.*, *Ali v. Vehi-Ship, LLC*, No. 17 CV 02688, 2017 WL 5890876, at *3 (N.D. Ill. Nov. 27, 2017) (valid delegation provision based solely on "arbitration clause . . . incorporat[ing] by reference the Commercial Arbitration Rules of the [AAA]" and noting "[t]he 'consensus view' of federal case law is that the incorporation by reference of the AAA Rules is clear and unmistakable evidence of an intention to arbitrate arbitrability") (citation omitted); *Ed's Pallet Servs., Inc. v. Applied Underwriters, Inc.*, No. 15-CV-1163-SMY-SCW, 2017 WL 9287091, at *3 (S.D. Ill. Apr. 7, 2017) ("As courts have repeatedly held, an arbitration provision that incorporates the rules of the [AAA] demonstrates an intent to submit gateway issues to arbitration.").

II. **PLAINTIFF CANNOT SIMULTANEOUSLY USE SNAPCHAT AND PURPORT TO "DISAVOW" THE CONTRACT THAT GOVERNS ITS USE.**

But even if the Court were to decide whether Plaintiff "disavowed" the Terms, Plaintiff still would be required to arbitrate her claims. Both California and Illinois law make clear that a minor cannot accept the benefit of a contract (here, using Snapchat) while claiming to "disavow" the contract to avoid agreed-upon arbitration. *See Paster v. Putney Student Travel, Inc.*, No. CV 99–2062 RSWL, 1999 WL 1074120, at *2 (C.D. Cal. June 9, 1999) ("Plaintiff . . . cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a clause that do not suit her."); *Sheller by Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 153–54 (N.D. Ill. 1997) ("[I]f the Court were to allow the minor Plaintiffs to disaffirm the contract, Plaintiffs would be retaining the advantage of employment—which entitled them to bring the instant Title VII suit—while repudiating their entire basis of employment—the employment application. . . . The Court cannot permit such a result; and, the Court is confident that the Illinois Supreme Court would not permit it either."). While Plaintiff argues *Sheller* was limited to the

employment contract context and thinks it was decided incorrectly, Opp'n at 10–12, she fails to cite any authority supporting her opinion of *Sheller*. In fact, the notion that "the privilege of minority . . . is to be used as a shield and not as a sword" was established by the Illinois Supreme Court **outside** the employment context. *See Shepherd v. Shepherd*, 97 N.E.2d 273, 282 (Ill. 1951).

Plaintiff argues, without a sworn declaration or any other evidence, that she deleted the Snapchat app from her phone in an attempt to "disaffirm" the Terms, and that her continued use of Snapchat is "*de minimus*." Opp'n at 14. Plaintiff ignores that her Snapchat account was active **on numerous occasions** after she filed her Complaint. Critically, Plaintiff submits no evidence denying that she continues to use Snapchat, but instead merely attempts to minimize her use, *see* Opp'n at 14 – despite the fact that she viewed 30 Snaps when she used Snapchat on January 22, 2021. Reynolds Decl. ¶ 8. Plaintiff also continued to use Snapchat after Snap filed its Motion on February 12, 2021. *See* Supplemental Declaration of Michelle Reynolds ¶ 4, attached as **Exhibit A**. For example, on February 14, Plaintiff spent nearly 2 hours using the Snapchat app and on February 15, she spent nearly 20 minutes on it. *Id.* ¶¶ 5 – 6. In sum, Plaintiff continues to enjoy the benefits of using Snapchat while simultaneously purporting to "disavow" the Terms. Plaintiff cannot "disavow" a contract under these circumstances, and her BIPA claims must therefore be arbitrated.

### III. SNAP'S TERMS ARE NOT UNENFORCEABLE ON PUBLIC POLICY GROUNDS.

Plaintiff argues the Terms agreed to by Plaintiff are unenforceable as a matter of Illinois public policy. Opp'n at 15. In support, Plaintiff alleges she "first created her Snapchat account in January 2019, [when] she was 11 years[] old" despite Snap "claim[ing] its app is only for those over the age of 13." *Id.* Plaintiff also cites a "10-year settlement with the Attorney General for the state of Maryland" from 2014, in which Snap "agreed to address the use of the app by young

children by complying with COPPA and taking specific steps to ensure that the app wasn't being used by children under 13." *Id.* at 16. Plaintiff's argument fails for at least three reasons.

<u>First</u>, Plaintiff does not (and cannot) explain how a 2014 settlement agreement with the Maryland Attorney General is relevant to **Illinois** public policy, nor how allowing minors under 13 to use Snapchat – even if true – is "so capable of producing harm" that enforcing Snap's Terms "would be contrary to the public interest." Opp'n at 17 (citation omitted). <u>Second</u>, despite her conclusory suggestion otherwise, the record in this case shows that Snap **did** comply with the settlement with the Maryland Attorney General. The Press Release Plaintiff attached to her Opposition notes that "[c]ompanies that operate on the internet or on mobile devices, especially those popular among youth, have a responsibility to protect their users' privacy and to be up front about what personal information they collect and the permanency of uploaded files." ECF No. 37-1 at 1. Snap *is* "up front about what personal information [it] collect[s]," as demonstrated by Snap's robust privacy policies to which users must agree before using Snapchat. *See, e.g.*, ECF No. 28 at 3. And Plaintiff's baseless claim that Snap "failed to take any reasonable measures to screen, prevent, and/or protect underage users," Opp'n at 16, is belied by the first page of Snap's Terms, which state "[n]o one under 13 is allowed to create an account or use the Services." ECF No. 26-4 at 1.[2] <u>Third</u>, Plaintiff has continued to use Snapchat after turning 13, thereby reaffirming her contract with Snap and negating her "public policy" argument.

---

[2] The Court should also reject Plaintiff's claim that Snap is "barred from enforcing the arbitration agreement under the doctrine of unclean hands." Opp'n at 18. Plaintiff cites no authority applying "unclean hands" to preclude a party from compelling arbitration. She instead concedes that "unclean hands" requires a "party's misconduct . . . [to] rise to the level of fraud or bad faith," Opp'n at 18 – something Plaintiff does not (and cannot) show here.

Dated: March 12, 2021

Respectfully submitted,

**SNAP INC.**

By: */s/ Elizabeth B. Herrington*
    By Its Attorney

Elizabeth B. Herrington
Tyler Zmick
Alborz Hassani
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001
beth.herrington@morganlewis.com
tyler.zmick@morganlewis.com
al.hassani@morganlewis.com

Raechel Keay Kummer*
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: +1.202.739.3000
raechel.kummer@morganlewis.com

*Counsel for Defendant Snap Inc.*

**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

      I, Elizabeth B. Herrington, hereby certify that on this 12th day of March, 2021, I caused a copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

                                                                     */s/ Elizabeth B. Herrington*
                                                                     Elizabeth B. Herrington