**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **K.F.C., a minor, by and though her guardian, ERIN CLARK, individually and on behalf of all others similarly situated,** | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Plaintiff,** | |
| **vs.** | |
| **SNAP, INC.,** | |
| **Defendant.** | |

**Case No. 3:21-cv-9-DWD**

*CORRECTED* MEMORANDUM & ORDER

**DUGAN, District Judge:**

The issue before the Court is whether a minor is bound by the terms of an arbitration agreement contained in the Terms of Service associated with a mobile application such that issues of validity and enforceability, and the effectiveness of the minor's disaffirmance, of the agreement should be decided by an arbitrator.

### I.  FACTUAL BACKGROUND

Plaintiff K.F.C. is a thirteen-year-old resident of Illinois. (Doc. 37 at 1) On January 4, 2019, Plaintiff created an account on Snapchat (Doc. 26-1 at 3), which is a camera application created by Defendant Snap, Inc. ("Snap") that enables users to communicate with short videos and images. (Doc. 1-1 at 7) To create the account, it was necessary for Plaintiff to click on a button to express her assent to Snapchat's Terms of Service. (Doc.

26-1 at 3) While the parties dispute when Plaintiff stopped using Snapchat,[1] the Terms of

Service in effect while Plaintiff was using Snapchat included an arbitration agreement.

(Doc. 26-1 at 2) On November 17, 2020, Plaintiff filed this action against Snap in Illinois

state court, alleging that two Snapchat features, "Lenses" and "Filters," use scans of facial

geometry and violated her rights under the Illinois Biometric Information Privacy Act,

740 Ill. Comp. Stat. 14/1, *et seq.* ("BIPA") (Doc. 1-1 at 7–16) On January 6, 2021, Snap

removed the case to this court. (Doc. 1) On February 12, 2021, Snap filed its Motion to

Compel Arbitration and Dismiss or in the Alternative, Stay Claims, based on the

arbitration clause in Snapchat's Terms of Service. (Doc. 25) The motion has been fully

briefed and is ripe for decision.[2] For the following reasons, the motion will be granted.

## II. DISCUSSION

As an initial matter, Plaintiff argues that Illinois law should control here, despite

the choice of California law in the Terms of Service. A federal court exercising diversity

jurisdiction must apply the choice-of-law rules of the state in which it sits. *Midwest Grain*

*Prods. Of Ill., Inc. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000). Under Illinois

law, a choice-of-law determination is necessary "only when a difference in law will make

a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*,

10 N.E.3d 902, 905 (Ill. 2014). As discussed below, there is no conflict between Illinois and

California law on the issues before the court, so no choice-of-law determination is

---

[1] Plaintiff claims she stopped using Snapchat in November 2020. (Docs. 1-1 at 4 & 37 at 13) Snap claims
Plaintiff was last active on Snapchat in January 2021. (Docs. 26 at 13 & 26-1 at 3)

[2] Plaintiff filed an additional affidavit in support of its response brief on May 3, 2021, the same day the court held an
evidentiary hearing on the motion. (Doc. 46) While the court takes a dim view of such last-minute filings, this affidavit
does not affect the court's reasoning.

necessary.

The Federal Arbitration Act ("FAA") operates to require arbitration only if there is a valid contract that contains a provision whereby the parties agree to submit certain issues to arbitration instead of the courts. Section 2 of the FAA provides in pertinent part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 2 is the "primary substantive provision of the Act," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and "reflects the fundamental principal that arbitration is a matter of contract." *Rent-A-Center., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The FAA thereby places arbitration agreements on equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* The Seventh Circuit has stated that "[w]e will compel arbitration under the Federal Arbitration Act if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (internal quotes omitted). Thus, the initial question to address is whether the Arbitration Agreement is enforceable under state law. But Snap argues that this question is one to be determined, not by this court, but by an arbitrator pursuant to the arbitration provisions contained in the Terms of Service.

"The division of labor between courts and arbitrators is a perennial question in cases involving arbitration clauses." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th

Cir. 2010). Generally, an arbitrator should decide a challenge to the validity of the contract as a whole. *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardenga*, 546 U.S. 440, 449 (2006)). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-a-Center*, 561 U.S. at 70. But, more to the point, unless a party challenges an arbitration agreement's delegation provision specifically, the court must treat that provision as valid and leave "any challenge to the validity of the Agreement as a whole for the arbitrator." *Id* at 72.

Here, Plaintiff challenges both the sufficiency of the delegation provision in the arbitration agreement, specifically, and the enforceability of all agreements contained in the Terms of Service, generally. First, Plaintiff argues the delegation provision does not provide clear and unmistakable evidence that the parties intended to delegate the question of arbitrability to an arbitrator. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (quotation marks and alterations omitted). The Terms of Service provide that "[t]he arbitrator will decide the jurisdiction of the arbitrator and the rights and liabilities, if any, of you and Snap Inc." (Doc. 26-3 at 13) Plaintiff argues that this provision is not the kind of clear delegation provision approved by courts in the past. (Doc. 37 at 7)

However, Snap points out that the Terms of Service state that the American Arbitration Association's ("AAA") Consumer Arbitration Rules will govern any arbitration. (Doc. 26-3 at 12) The AAA's Consumer Arbitration Rules provide that "[t]he

arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, [and t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." *American Arbitration Association*, "Consumer Arbitration Rules," available at www.adr.org/sites/default/files/Consumer%20Rules.pdf; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) ("The rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions).

"As courts have repeatedly held, an arbitration provision that incorporates the rules of the American Arbitration Association demonstrates an intent to submit gateway issues to arbitration." *Ed's Pallet Servs., Inc. v. Applied Underwriters, Inc.*, 2017 WL 9287091, at *3 (S.D. Ill. Apr. 7, 2017) (citing *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *Cooks v. Hertz Corp.*, No. 3:15-CV-0652-NJR-PMF, 2016 WL 3022403, at *4 (S.D. Ill. Apr. 29, 2016) ("By agreeing to have the AAA's rules govern the parties' arbitration, they also agreed to leave the issue of whether [Plaintiff's] claims belong in arbitration to an arbitrator.") Thus, Snap's incorporation of the AAA's rules provides clear and unmistakable evidence of intent to delegate threshold issues of the "existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim" to the arbitrator.

Plaintiff goes on to argue that the entire arbitration agreement is unenforceable because she entered into it as a minor and now disaffirms it. (Doc. 37 at 8–19) In other words, Plaintiff suggests that the arbitration provision that is part of the Terms of Service

is void as disaffirmed and, therefore, its requirements that the matter be submitted to arbitration cannot be enforced.[3] Nevertheless, the law requires that the court "enforce a valid delegation clause even if the underlying arbitration agreement is potentially void." *Kuznik v. Hooters of Am., LLC*, 2020 WL 5983879, at *4 (C.D. Ill. Oct. 8, 2020) (citing *Rent-a-Center*, 561 U.S. at 71–72). Because the delegation clause contained in the AAA arbitration rules appears to be valid, the court must refer to the arbitrator the question of the arbitration agreement's enforceability — including issues related to Plaintiff's status as a minor and the effectiveness of any disavowal on the part of the Plaintiff.

### III.  CONCLUSION

For these reasons, it is ORDERED that Defendant's motion to compel arbitration (Doc. 25) is GRANTED and this matter is hereby DISMISSED without prejudice. Clerk to close case.

**SO ORDERED.**

Dated: June 10, 2021

_____
DAVID W. DUGAN
United States District Judge

---

[3] Section 4 says that a court, in response to a motion by an aggrieved party, must compel arbitration "in accordance with the terms of the agreement" when the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Henry Schein, Inc.* 139 S. Ct. 524, 530 (2019). While a contract with a minor is "voidable" under both Illinois and California law, it becomes void only upon disaffirmance. Thus, the formation or "making" of the agreement is not at issue in the present matter. *See* Cal. Fam. Code § 6710 (West) ("[A] contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative.").